Peter J. **RICCIARDI,**
**Plaintiff, Appellant,**

v.

The **CHILDREN'S HOSPITAL**
**MEDICAL CENTER, et al.,**
**Defendants, Appellees.**

No. 86–1501.

United States Court of Appeals,
First Circuit.

Argued Dec. 3, 1986.
Decided Feb. 6, 1987.

Philip F. Mulvey, Jr., with whom Philip F. Mulvey, III, Boston, Mass., was on brief, for plaintiff, appellant.

William J. Dailey, Jr., with whom Robert G. Eaton and Sloane and Walsh, Boston, Mass., were on brief, for defendants, appellees.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from a directed verdict for defendants. In a medical malpractice suit, plaintiff-appellant Peter Ricciardi attempted to introduce into evidence on various grounds a note entered into his medical chart stating that an unscheduled event occurred while he was undergoing surgery. The physician who made the entry did not have personal knowledge of the event and could not recall the source of the information. Ricciardi appeals the district court's rulings that the note was inadmissible hearsay and that his expert witness would not be allowed to rely on the note in forming an opinion as to the cause of Ricciardi's injuries. We affirm.

## I. BACKGROUND

On July 11, 1979, Ricciardi underwent surgery at the Children's Hospital Medical Center (the Hospital) in Boston, Massachusetts, for the replacement of his aortic valve. He suffered neurological difficulties after the operation because, according to him, someone was negligent during his operation. He brought a malpractice suit against the Hospital, surgeons William Norwood and Rosalyn Sterling, and the anesthesiologist, "John Doe."

Ricciardi's only proof of negligence was a note dated July 13, 1979, two days after the operation, entered into his medical chart by Dr. Krishna Nirmel, a neurology resident at the Hospital. The note, contained in a three-page handwritten consultant's report, said: "during surg. episode of aortic cannula accidently out x 40–60 secs." An aortic cannula provides a means of circulating blood from the heart-lung machine back into the body when the heart is being bypassed for surgery. The note was the basis for Ricciardi's theory that a cannula being used during his operation came out because of someone's negligence and an air embolus was introduced into his blood stream. Dr. Nirmel, however, did not have personal knowledge of the alleged event and did not know where he obtained the information he recorded in the note. He said he usually spoke with the nurses and staff attending to the patient before, during, and after surgery, but in this instance he could not recall speaking with any members of the surgical team. He assumed that he obtained the information from "professional people."

At pretrial the case was defined as involving only two issues: (1) whether the cannula came out; and if so, (2) whether this caused Ricciardi's injuries. The note, therefore, was crucial to Ricciardi's case. The district court rejected his various attempts to introduce the note at trial. The court ruled that the note was hearsay not within any exceptions and that it did not become an adoptive admission of party-opponent Dr. Norwood when he heard of it. The court also refused to allow Ricciardi's expert witness, Dr. Harold Kay, to rely on the note in forming his opinion about the cause of Ricciardi's injuries. Because there was no other evidence of negligence, the court directed a verdict for defendants.

## II. THE EVIDENTIARY RULINGS

Dr. Nirmel's note clearly is hearsay. It is a statement made by someone other than the declarant offered to prove the truth of the matter asserted. See Fed.R.Evid. 801.[1] The note, therefore, is not admissible evidence unless it comes within an exception to the general rule excluding hearsay. See Fed.R.Evid. 802. Ricciardi argues that the note is admissible on five grounds: (1) under the hearsay exception provided in the Massachusetts hospital records statute, Mass.Gen.Laws Ann. ch. 233, § 79 (West 1986); (2) as a record of a regularly conducted activity under Fed.R.Evid. 803(6); (3) as a recorded recollection under Fed.R.Evid. 803(5); (4) as a statement not specifically covered by other exceptions under Fed.R.Evid. 803(24); and (5) as an adoptive admission by party-opponent Dr. Norwood under Fed.R.Evid. 801(d)(2)(B). Ricciardi

---

**1.** Fed.R.Evid. 801(c) defines hearsay as follows: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

also contends that the court erred when it refused to allow his expert witness to rely on the note in forming an expert opinion.

### A. The Massachusetts Statute and Federal Rule 803(6)

Mass.Gen.Laws ch. 233, § 79, provides a hearsay exception for certain hospital records required to be kept by law.[2] The parties agreed that this statute had "at least something to do with the admissibility of this particular note." The court then considered whether the note fit within the state exception and concluded that it did not.

■ The correlative Federal Rule governing the admissibility of hospital records is Rule 803(6), the hearsay exception for records of a regularly conducted activity.[3] In general, the Federal Rules apply to all cases in the district courts, including diversity actions. *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 245 (1st Cir.1985); Fed.R.Evid. 1101(b). Congress' power to promulgate rules of evidence for use in federal court, even though they may differ from state rules, has been established since *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). "Of course, federal courts and Congress are constitutionally precluded from displacing state substantive law with federal substantive rules in diversity actions." *McInnis v. A.M.F., Inc.*, 765 F.2d at 244. The question here, then, is whether application of the federal business records exception impinges on some substantive state policy embodied in the state rule. We do not see how applying the federal rule in this case would be such an intrusion.

■ The Massachusetts Supreme Judicial Court, in construing its statute, said that "[a]pparently the legislation making this hearsay evidence admissible was enacted primarily to relieve the physicians and nurses of public hospitals from the hardship and inconvenience of attending court as witnesses to facts which ordinarily would be found recorded in the hospital books." *Leonard v. Boston Elevated Ry.*, 234 Mass. 480, 482, 125 N.E. 593, 593 (1920). Arguably, all hearsay exceptions are premised on a conclusion that the utility and reliability of certain kinds of hearsay outweigh the difficulties and burdens of obtaining the declarant's testimony. Al-

**2.** The Massachusetts hospital records statute provides in pertinent part:

Records kept by hospitals, dispensaries or clinics, and sanatoria under [the Massachusetts statute requiring certain publicly supported hospitals to maintain records] shall be admissible ... as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases and the court may, in its discretion, admit copies of such records, if certified by the persons in custody thereof to be true and complete; but nothing therein contained shall be admissible as evidence which has reference to the question of liability.

**3.** Rule 803(6) provides a hearsay exception for:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

We note that Massachusetts has a separate hearsay exception for business records in general, similar to Rule 803(6), which provides:

An entry in an account ... or writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record at the time of said act, transaction, occurrence or event or within a reasonable time thereafter. Mass.Gen.Laws Ann. ch. 233, § 78. None of the parties has contended that this statute applies or that it has any substantive implications.

though the federal rule is not specifically aimed at hospital records, it provides a hearsay exception for records kept in the course of *any* regularly conducted business activity, which would include publicly supported hospitals. The federal rule, therefore, is consistent with the state legislature's concern about the undue burden of requiring medical personnel in publicly supported hospitals to testify despite the availability and usual reliability of regularly kept records.

Moreover, the statute functionally is evidentiary in nature. The Supreme Judicial Court described it "in effect" as an exception to the hearsay rule that "allows admission of the substantive content of hospital records because of the presumption of reliability which attaches to statements relating to treatment and medical history in these records." *Bouchie v. Murray*, 376 Mass. 524, 527-28, 381 N.E.2d 1295, 1298 (1978). The federal rule does the same thing. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6)[01], at 803-175 (1985); *Bouchie v. Murray*, 376 Mass. at 528, 381 N.E.2d at 1295 (Supreme Judicial Court cited to federal cases and commentary concerning Rule 803(6) in construing the purpose of the state hospital records exception). In fact, these two rules are very similar in application. In this case, the note is inadmissible under both rules. Therefore, even if we could discern some substantive policy at stake in the state hospital records exception, there would be no conflict with that policy in applying the federal rule here.

■ The Supreme Judicial Court has recommended a four-part analysis for determining the admissibility of hospital records under the state rule. *Bouchie v. Murray*, 376 Mass. at 531, 381 N.E.2d at 1300. "First, the document must be the type of record contemplated by [Mass.Gen.Laws ch.] 233, § 79." *Id.* There is no dispute that Dr. Nirmel's consultation report, in which the note was contained, was such a document. "Second, the information must be germane to the patient's treatment or medical history." *Id.* The district court

concluded that the note would be germane to Ricciardi's care and treatment plan because it would be of some help in identifying the cause of his problem. We agree. "Third, the information must be recorded from the personal knowledge of the entrant or from a compilation of the personal knowledge of those who are under a medical obligation to transmit such information." *Id.* The district court correctly ruled that this requirement was not met because Dr. Nirmel did not have personal knowledge of the event he recorded, nor had it been shown that he obtained his information from someone with an obligation to supply it. A transcribed note of unknown origins does not "possess the characteristics justifying the presumption of reliability" normally accorded hospital records. *Id.* at 528, 381 N.E.2d at 1298.

Under the fourth part of the analysis, the Supreme Judicial Court instructed that if the information was not recorded from personal knowledge, but instead was volunteered by a third person, the statements "are not admissible unless they are offered for reasons other than to prove the truth of the matter contained therein or, if offered for their truth, come within another exception to the hearsay rule." *Id.* at 531, 381 N.E.2d at 1300. Simply stated, such information is only admissible if it would come in on some other basis.

■ The same result is reached under the business records exception in the Federal Rules. To be admissible under Rule 803(6), the entry in the record must be the opinion or diagnosis of the physician who made it or of some other "person with knowledge." In *Petrocelli v. Gallison*, 679 F.2d 286 (1st Cir.1982), this court considered the admissibility of parts of a hospital record describing an event during an operation the patient underwent several months earlier and containing the patient's description of the cause of his pain. It was unclear whether the information originated from the reporting doctors or from the patient or his wife. *Id.* at 290. We said:

Given the impossibility of determining from the records themselves whether

these reports reflected medical judgments, and the lack of any corroborative evidence or testimony offered by the plaintiffs to assure the court that these were professional opinions, the district court could reasonably determine that the notations were simply too inscrutable to be admitted, bearing in mind that, if admitted under Rule 803(6), they would be admitted for their truth without any opportunity to cross-examine the physicians who made them.

*Id.* at 291. Although Dr. Nirmel's entry did not concern an event occurring before the alleged malpractice, and there is no indication that the patient himself provided the information, the note suffers from the same critical deficiency as the entries in *Petrocelli:* the source of the information is unknown.

Furthermore, a record is not admissible under the federal rule if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Fed.R.Evid. 803(6). An unknown source is hardly trustworthy. *See Meder v. Everest & Jennings, Inc.,* 637 F.2d 1182, 1187 (8th Cir.1981). Therefore, there is no conflict between the state and federal rules. The note is not admissible under either.

### B. Federal Rule 803(5)

■ Dr. Nirmel's inability to recall the source of the information he entered into Ricciardi's chart also is fatal to admissibility under the recorded recollections exception provided in Federal Rule 803(5).[4] The record must be of "a matter about which a witness once had knowledge" to be admissible as a recorded recollection. Fed.R. Evid. 803(5). Dr. Nirmel did not personally observe the surgery and later make a record of it. He obtained the information from someone else who may or may not have had personal knowledge of the events in the operating room. If the recorder wrote down hearsay, the hearsay itself must come within an exception to be admissible. *Weinstein's Evidence* ¶ 803(5)[01], at 803–162 to –163.[5] This cannot be established if the source of the information is unknown. The note, therefore, is not admissible as a recorded recollection.

### C. Federal Rule 803(24)

■ Neither is the note admissible under the residual exception provided in Federal Rule 803(24).[6] Ricciardi argues that the district court erred by giving only "superficial and inadequate" consideration to the admissibility of the note under this exception. The court's decision not to allow the note in under Rule 803(24) may have been

---

4. Rule 803(5) provides a hearsay exception for:
   A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

5. *McGarry v. United States,* 388 F.2d 862, 869 (1st Cir.1967), *cert. denied,* 394 U.S. 921, 89 S.Ct. 1178, 22 L.Ed.2d 455 (1969), is consistent with this requirement. In *McGarry,* this court held that an internal revenue agent's memorandum of a conversation with a taxpayer, in which the taxpayer admitted including certain income in his return, was admissible as a recorded recollection. Although not stated explicitly in the opinion, the taxpayer's statement was an admission.

6. Rule 803(24) provides a hearsay exception for:
   A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

summary, but little explanation was needed after its extensive analysis into the trustworthiness of the note in relation to the other exceptions. Rule 803(24) applies only to statements not specifically covered by other hearsay exceptions "but having equivalent circumstantial guarantees of trustworthiness." Fed.R.Evid. 803(24). The note did not have such guarantees and was, therefore, not admissible under the residual exception.

### D. Adoptive Admission

■ Under the Federal Rules, "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement of which he has manifested his adoption or belief in its truth." Fed.R. Evid. 801(d). Ricciardi contends that the note became an adoptive admission of party-opponent Dr. Norwood. According to Ricciardi, Dr. Norwood must have read the note around the time it was written, and by not objecting to it, he impliedly manifested his belief in its truth.

Ricciardi did not make any showing to the district court, however, of circumstances under which Dr. Norwood "manifested his adoption or belief" in the note's truth. He points only to Dr. Norwood's deposition testimony, which was not before the district court and is not entitled to be considered here. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1174 (5th Cir. 1985) (per curiam) (on petition for a rehearing); *Fleming v. Gulf Oil Corp.*, 547 F.2d 908, 911 (10th Cir.1977).[7] No other witness said anything about Dr. Norwood seeing the note or his reaction to it. Thus, there is not a sufficient basis to conclude that Dr. Norwood read the note and under the cir-

cumstances would have objected to it if he did not think it were true. *Weinstein's Evidence* ¶ 801(d)(2)(B)[01], at 801–202 n. 15 ("In all cases ... the burden is on the proponent to convince the judge that in the circumstances of the case a failure to respond is so unnatural that it supports the inference that the party acquiesced in the statement.").

### E. Basis for Expert Opinion

■ As an alternative basis for introducing Dr. Nirmel's note to prove that the cannula came out during surgery, Ricciardi sought to have an expert witness, Dr. Kay, rely on the statement to form an opinion that this occurred. Dr. Kay testified that there were numerous ways a potentially injurious embolus could have occurred in Ricciardi's situation. The most common way, he said, was if residual air were trapped in the chambers of the heart or in the aorta. He said it also could occur if air were introduced into the heart through a monitoring line, or through the aortic cannula when it was initially inserted, if it leaked or became disconnected, or if it came out during surgery. Dr. Kay told the court that if he could rely on Dr. Nirmel's note, it would be his opinion that the cause of the embolus was that the cannula came out. Otherwise, he would have to conclude, based on probabilities, that the cause was residual air being trapped. The court ruled that the note was too unreliable to be used as the basis of Dr. Kay's opinion and, therefore, Dr. Kay was unable to support Ricciardi's theory of the case.

Under the Federal Rules, an expert is not confined to admissible evidence in forming

---

**7.** Apparently, the deposition was filed but neither offered in evidence nor brought to the district court's attention. Even if the district court had been presented with this testimony, however, we think it still would have been proper not to allow the note into evidence as an adoptive admission. During his deposition, Dr. Norwood related only vague recollections of "probably" having read or heard about the note while on the staff at the Hospital. He said his only memory of having a reaction to it was that he was curious, but he could not remember any specific measures taken to track the informa-

tion to clarify the situation. A failure to object to the information would not necessarily manifest a belief in the note's truth. A physician's first response to information suggesting a problem during surgery may be to research the matter. In this case, there were other physicians, anesthesiologists, nurses, and technicians in the operating room. Therefore, when Dr. Norwood first learned of the note, he might not have had sufficient knowledge to assess its verity and affirm or deny it. *See Weinstein's Evidence* ¶ 801(d)(2)(B)[01], at 801–203.

an opinion. Rule 703 provides that an expert may base an opinion on inadmissible facts or data if "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." "[T]his part of the rule is designed to prevent enlarging the category of permissible data to break down the rules of exclusion unduly." *Almonte v. National Union Fire Ins. Co.,* 787 F.2d 763, 770 (1st Cir.1986). It is especially important when the facts or data on which the expert seeks to rely have obvious characteristics of unreliability.

The "fact" or "datum" on which Dr. Kay offered to base his opinion was not one medical experts frequently encounter. Dr. Kay said that never before had he seen such a statement in a hospital chart. Although neurological consultation reports may well be the "type" of records upon which an expert would reasonably rely, there has been absolutely no showing here that unattributed material usually comprises a part of such consultative reports, or that experts in the field would rely on this kind of a statement. The evidence Ricciardi claims meets this requirement falls far short. Dr. Kay's testimony certainly does not establish that experts in the field would rely on such a note. Indeed, his characterization of the note as "bizarre" suggests the contrary. Ricciardi also refers to the testimony of Dr. Michael Bresnan, a pediatric neurologist at the Hospital, who said that when he examined Ricciardi he read Dr. Nirmel's report. Dr. Bresnan said he did not have any doubt about what was written in the chart and that he accepted what Dr. Nirmel wrote "to be the truth as he has reported it to be." Dr. Bresnan was not asked, however, whether he accepted the note about the cannula in particular, or whether he would rely on this type of note in forming an expert opinion. Dr. Bresnan's only specific reference to the contents of Dr. Nirmel's report concerned a description of Ricciardi's difficulties and a differential diagnosis of three possible causes of them. This does not establish that experts reasonably would rely on the note about the cannula. Therefore, we hold that it was within the district court's discretion not to allow Dr. Kay to rely on the note in forming his expert opinion. *United States v. Wilson,* 798 F.2d 509, 517 (1st Cir.1986) ("Under Rule 703, the admission of expert testimony is a matter reserved to the trial court's discretion.").

Ricciardi also argues that, in ruling that Dr. Kay could not rely on the note, the district court erroneously took into consideration that his opinion would embrace the ultimate issue in the case. Rule 704 provides that except for testimony as to the mental health or condition of a criminal defendant, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." According to Ricciardi, at the end of the trial the court implied that it might have ruled differently if the opinion were not being used to prove the decisive fact in the case: that the cannula came out. We disagree. When it considered the basis for Dr. Kay's proffered opinion, the court clearly decided not to allow him to rely on the note because of its unknown origin and consequent unreliability, and we have concluded that this was within the district court's discretion. The discussion to which Ricciardi points was made in the context of the court's decision to direct a verdict for defendant. The court said that given the way the issues had been defined, the cannula coming out was "the decisive fact that determines negligence, if there was any." The court was not saying that Dr. Kay could not rely on the note to form an opinion embracing the decisive fact, but that because the note was the only evidence that did embrace the ultimate issue, and it was not admissible as evidence or properly the basis for an expert opinion, a directed verdict was in order.

## III. CONCLUSION

Ricciardi's medical malpractice claim was based on a single bit of hearsay evidence: a handwritten comment from an unknown source buried in a three-page consultation report made two days after the operation.

The note did not have the circumstantial guarantees of trustworthiness to justify an exception to the general rule of excluding hearsay; there was an insufficient basis to conclude that defendant Dr. Norwood manifested an adoption or belief that it was true to qualify it as an adoptive admission; and it was not established that it was the kind of information upon which an expert would reasonably rely in forming an opinion. Therefore, the note was not admissible evidence and not properly the basis for an expert opinion. We affirm the district court's evidentiary rulings and the directed verdict for defendant.

*Affirmed.*