United States Court of Appeals United States Court of Appeals
For the First Circuit For the First Circuit


No. 97-1584

WALDO G. VAZQUEZ, ET AL.,

Plaintiffs, Appellants,

v.

CARLOS LOPEZ-ROSARIO, ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge] 



Before

Lynch, Circuit Judge, 

Cyr, Senior Circuit Judge, 

and DiClerico, District Judge.* 


Harry Anduze Monta o, with whom Raul S. Mariani 
Franco was on brief, for appellants. 
Rafael Cuevas-Kuinlam, with whom Antonio Cuevas- 
Delgado and Cuevas, Kuinlam & Bermudez were on brief, for 
appellee Carlos Lopez-Rosario.
Jaime Mayol-Bianchi, with whom Jose R. Perez- 
Hernandez and Pierluisi & Mayol-Bianchi, P.S.C. were on 
brief, for appellee Puerto Rico Marine Management, Inc.
Radames A. Torruella, with whom Carmencita 
Velazquez-Marquez, Jorge A. Antongiorgi, and McConnell Valdes 
were on brief, for appellee Puerto Rico Maritime Shipping
Authority.

 

*Of the District of New Hampshire, sitting by designation.



January 22, 1998


-2- 2

LYNCH, Circuit Judge. This case is another in a LYNCH, Circuit Judge.  

series of cases arising out of the elections in Puerto Rico

in 1992, in which the New Progressive Party (NPP) won power

from its rival, the Popular Democratic Party (PDP). During

the current decade, plaintiffs in these cases usually have

been members of the PDP who complain that the incoming NPP

administration has deprived them of their government jobs in

violation of their rights under the First Amendment.1 In

this case, plaintiff Waldo G. Vazquez, an NPP supporter,

claims his job at a government contractor was eliminated as

part of an internal party feud. He sues his employer, its

major client (a public corporation), and a member of the

client's board under 42 U.S.C. 1983 (1994).

The district court concluded that Vazquez's

evidence, principally his own testimony, amounted to no more

than "hearsay upon hearsay" and "rumors, hearsay, gossip, his

personal feelings, his intuition and his conclusions," and

granted summary judgment for defendants. Vazquez argues that

the district court committed error in excluding evidence as

hearsay when the statements were admissions by party-

opponents. Thus, we explore in some detail the requirements

of Fed. R. Evid. 801(d)(2) as to party-opponent admissions, a

recurring issue in employment cases.

 

1. See, e.g., Acosta-Orozco v. Rodriguez-de-Rivera, No. 97- 
1489, 1997 WL 775350, at *8 n.1 (1st Cir. Dec. 22, 1997)
(citing cases).

-3- 3

We agree with Vazquez that some of the

conversations which the district court excluded on hearsay

grounds are admissions of a party-opponent and should have

been considered as part of his case. To win the battle is

not necessarily to win the war. Because the evidence Vazquez

presents is insufficient to create a genuine issue of

material fact in any event, we affirm.

I. I.

We state the facts in the light most favorable to

the party opposing summary judgment, Acosta-Orozco v. 

Rodriguez-de-Rivera, No. 97-1489, 1997 WL 775350, at *1 (1st 

Cir. Dec. 22 1997), and describe the evidence in some detail.

Waldo Vazquez was employed for many years by Puerto

Rico Maritime Management, Inc. (PRMMI), a private corporation

that provides management services to the Puerto Rico Marine

Shipping Authority (PRMSA), a public corporation created by

the Puerto Rico legislature. PRMSA's Governing Board has

seven members appointed by the Governor of Puerto Rico,

subject to confirmation by the Commonwealth's Senate. See 23 

L.P.R.A. 3054 (1994). PRMSA acknowledges it is a

government agency, and we have held it is a "political

subdivision" of the Commonwealth of Puerto Rico under the

National Labor Relations Act. See Chaparro-Febus v. 

International Longshoremen Ass'n, Local 1575, 983 F.2d 325 

-4- 4

(1st Cir. 1992). At the time of his dismissal from PRMMI in

1993, Vazquez held the title Vice President of Operations,

Caribbean Division.

In 1992, a new contract between PRMSA and PRMMI was

signed, giving authority to the PRMSA Board over "key

personnel" within PRMMI. PRMSA was given the right to

dismiss high-level PRMMI employees "for any material breach

of its contract by such [PRMMI] key personnel and/or for just

cause." Vazquez's position was among those designated "key

personnel." 

In 1993, PRMSA had accumulated losses in excess of

$300 million. Vazquez does not dispute this. On February

24, 1993, the PRMSA Board voted, in light of these high

losses, to authorize a reduction-in-force (RIF) of twenty-six

employees at PRMMI; eventually at least forty-one employees'

jobs were eliminated. Vazquez's position was among those

selected for elimination, either directly by the Board or

pursuant to its RIF directive. The record is not clear

whether Vazquez's position was among those originally

selected for elimination by the Board. However, as some

evidence supports the conclusion that the Board directly

authorized Vazquez's dismissal, we will assume that it did.

In late March 1993, Steve Schulein, a high-level

PRMMI official, informed Vazquez over breakfast at the

Ambassador Plaza Hotel in Puerto Rico that his position was

-5- 5

going to be eliminated at the beginning of April. According

to Vazquez's testimony, Schulein told Vazquez that he did not

understand why Vazquez was to be dismissed, and that the

elimination of his position had not been part of the original

reorganization plan submitted to the PRMSA Board. Schulein

said that he understood that the decision came from a member

of the PRMSA Board. This conversation took place in the

period when the other PRMMI employees were also being let go.

The next day, Vazquez called Manuel Luis del Valle,

Chairman of the Governing Board of PRMSA, in order to

ascertain why his position had been selected for elimination

in the Board's new plans for PRMMI's reorganization. Vazquez

told Del Valle that his dismissal "was an injustice and a

persecution." Vazquez argued that similar employees had not

been eliminated, and that he had rejected the company's early

retirement program two years before because he needed the

salary and felt he still had much to offer the company. Del

Valle promised he would help Vazquez fight his proposed

dismissal, because, according to Vazquez, Del Valle "also

understood that it was an injustice."

On April 2, 1993, Vazquez received a letter

informing him that "due to [PRMMI's] current financial

condition you will be laid off . . . ." 

Vazquez continued his inquiries and protests about

his dismissal. At some later time, Del Valle told Vazquez of

-6- 6

a conversation Del Valle had with Carlos Lopez-Rosario, a

member of the PRMSA Board. According to Vazquez, Del Valle

told him that Lopez had told Del Valle that "the problem" was

that Vazquez had "political differences" with Lopez. The

record is unclear when the conversation between Lopez and Del

Valle supposedly took place or whether it had anything to do

with Vazquez's dismissal. Del Valle's comments also

confirmed what Vazquez calls "hallway gossip" that Lopez

disliked Vazquez.

Vazquez suspected that these "political

differences" stemmed from the NPP's gubernatorial primary in

1992. Vazquez had supported the losing candidate, Carlos

Romero-Barcelo ("Romero"), now the Commonwealth's Resident

Commissioner in Washington, while Lopez had supported the

winner, Pedro Rosello, now the Governor of Puerto Rico. 

Vazquez speculated that this disagreement must have

motivated his dismissal. He remembered a conversation with

Lopez a few years earlier at an NPP activity in the home of a

prominent supporter. Vazquez had expressed his preference

for Romero as a gubernatorial candidate and Lopez had

disagreed, arguing for Rosello. Vazquez also speculated that

Lopez might be retaliating against him for the work of

Vazquez's wife in organizing a women's group to support

Romero in a political campaign almost two decades earlier.

-7- 7

According to Vazquez, Miguel Rossy, PRMMI's

President, confirmed in a conversation at a local restaurant

that Vazquez's position was not included in the original

reorganization plan and that the decision came from an

unnamed PRMSA Board member, "[s]omebody who doesn't . . .

like you, who is opposed to Carlos [Romero's] people."

Vazquez took this unnamed person to be Lopez.

On several occasions, Vazquez also asked both

Commissioner Romero and Governor Rosello personally to

intervene and reverse the decision, citing his long record of

service with PRMMI. The Governor told Vazquez that he would

have to handle the issue with the PRMSA Board himself.

According to Vazquez, at some point Ricardo Gonzalez, a PRMSA

Board member, told Vazquez that he had tried to get the

decision reversed, but that "the pressure was too strong."

Gonzalez did not explain what he meant by "pressure," or who

was applying pressure.

Finally, in May 1993, Vazquez met with Lopez

personally in Lopez's office at PRMSA. Vazquez asked Lopez

whether what Del Valle had told him about "political

differences" was true. Lopez replied, according to Vazquez,

"I made some remarks . . . those remarks to Manuel Luis [del

Valle] over a Coca-Cola or a cup of coffee, but Manuel Luis

shouldn't have told you." There is no indication when such

remarks were made.

-8- 8

II. II.

Vazquez filed suit against PRMSA, PRMMI and Lopez,

alleging that his dimissal was retaliation for his support of

Romero, in violation of his First Amendment2 rights of

political association under Elrod v. Burns, 427 U.S. 347 

(1976) and Branti v. Finkel, 445 U.S. 507 (1980).3 Following 

 

2. We note that, under plaintiff's theory, the state action
doctrine poses no bar to his assertion of a First Amendment
claim against PRMSA and Lopez, although he was employed at a
private company. Cf. Yeo v. Town of Lexington, No. 96-1623, 
1997 WL 748667, at *8 (1st Cir. Dec. 9, 1997) (en banc) ("If
there is no state action, then the court may not impose
constitutional obligations on (and thus restrict the freedom
of) private actors."). For summary judgment purposes, we
take it that Vazquez's dismissal came at the insistence of
the Board of Governors of a state agency, an agency which had
retained the power in its contract to demand the dismissal of
"key personnel." Furthermore, although plaintiff was not a
government employee, he was dismissed, at the government's
insistence, from his job with a government contractor. The
First Amendment forbids the government not only from
interfering with the associational rights of its employees,
but also from using its power over contractors to punish its
political opponents. See Board of County Comm'rs v. Umbehr, 
116 S. Ct. 2342 (1996); O'Hare Truck Serv., Inc. v. City of 
Northlake, 116 S. Ct. 2353 (1996). Moreover, because his 
claim fails against the state actors, it fails against the
private or semi-private actors who did the state's bidding.

3. Under Elrod and Branti, the government may not condition 
employment on membership in the party in power, unless party
affiliation is an appropriate requirement for the position.
See Branti, 445 U.S. at 517-18. Vazquez's claim is that his 
support of Romero prompted his dismissal by a member of a
rival faction within the same party.
It is unclear from the summary judgment record whether
Vazquez's support of Romero should be analyzed under the
categorical rule for political affiliation of Elrod and 
Branti or under the balancing test for political speech by 
government employees established in Pickering v. Board of 
Educ., 391 U.S. 563 (1968). See, e.g., Rodriguez-Rodriguez 
v. Munoz-Munoz, 808 F.2d 138, 143-147 (1st Cir. 1986) 
(contrasting a claim based on "affiliation with a particular

-9- 9

discovery, the district court granted motions for summary

judgment for PRMMI and Lopez, and a few days later, granted

summary judgment sua sponte for PRMSA, which had not joined

the other defendants' motions. On appeal, Vazquez claims

that the district court erred in excluding the conversations

he relates in his deposition on hearsay grounds, because most

of the statements, he says, were admissible under Fed. R.

Evid. 801(d)(2) as admissions of a party-opponent. Vazquez

claims that the conversations he describes were sufficient

evidence to permit his case to survive summary judgment. He

also claims that the district court abused its discretion in

entering summary judgment sua sponte for PRMSA.

III. III.

Evidence that is inadmissible at trial, such as

inadmissible hearsay, may not be considered on summary

judgment. See Fed. R. Civ. P. 56(e); FDIC v. Roldan-Fonseca, 

795 F.2d 1102, 1110 (1st Cir. 1986). We review the district

court's decision to exclude such evidence for abuse of

discretion. See General Elec. Co. v. Joiner, No. 96-188, 

1997 WL 764563, at *4 (U.S. Dec. 15, 1997); Nieves-Villanueva 

v. Soto-Rivera, No. 96-1285, 1997 WL 775545, at *5 (1st Cir. 

 

political group" and one based on active partisan activity,
speech or running for office). The parties and the district
court assumed the Elrod-Branti test applied. We determine 
that summary judgment was appropriate even under the more
demanding Elrod-Branti standard, and therefore do not reach 
the issue of which line of First Amendment precedent should
apply.

-10- 10

Dec. 22, 1997). Once we determine what evidence can properly

be considered, we review the district court's decision to

grant summary judgment de novo. Acosta-Orozco v. Rodriguez- 

de-Rivera, No. 97-1489, 1997 WL 775350, at *1 (1st Cir. Dec. 

22, 1997).

A. Hearsay and Party-Opponent Admissions 

Fed. R. Evid. 801(c) defines hearsay generally as

"a statement, other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to

prove the truth of the matter asserted." All of the

conversations which Vazquez relates fit this general

definition, as they are offered to show that Lopez was behind

Vazquez's dismissal, and that his motive was to retaliate for

Vazquez's support of Romero. Indeed, most of the

conversations are hearsay within hearsay.

Vazquez argues, however, that these conversations

are nonetheless admissible because the Federal Rules of

Evidence define admissions by a party-opponent as "not

hearsay." See Fed. R. Evid. 801(d)(2). Vazquez argues that 

the comments by high PRMSA and PRMMI officials, acting within

the scope of their agency or employment, are admissible under

this rule. In addition, Vazquez properly notes, there is no

objection to "hearsay within hearsay" if each link in the

chain is admissible under an exception to the hearsay rules

or is not defined as hearsay. See Fed. R. Evid. 805. 

-11- 11

Careful scrutiny of the comments on which Vazquez relies is

necessary to evaluate this argument.

For a statement to be an admission under Rule

801(d)(2), the statement must be made by a party, or by a

party's agent or servant within the scope of the agency or

employment. See, e.g., Woodman v. Haemonetics Corp., 51 F.3d 

1087, 1093-94 (1st Cir. 1995); Union Mutual Life Ins. Co. v. 

Chrysler Corp., 793 F.2d 1, 6-8 (1st Cir. 1986).4 Each link 

in the chain must be admissible, either because it is an

admission and thus not hearsay or under some other hearsay

exception.

The conversations that Vazquez himself describes as

"hallway gossip" were properly excluded as hearsay. Although

Vazquez identifies some of the individuals who related the

 

4. Fed. R. Evid. 801(d)(2) provides that a statement is "not
hearsay" if:
The statement is offered against a party
and is (A) the party's own statement in
either an individual or a representative
capacity or (B) a statement of which the
party has manifested an adoption or
belief in its truth, or (C) a statement
by a person authorized by the party to
make a statement concerning the subject,
or (D) a statement by the party's agent
or servant concerning a matter within the
scope of the agency or employment, made
during the existence of the relationship,
or (E) a statement by a coconspirator of
a party during the course and in
furtherance of the conspiracy.
The other exceptions are not relevant to the statements
offered in this case, which can more easily fit the
exceptions mentioned in the text.

-12- 12

rumor that Lopez disliked him, nothing in the record

identifies the sources of this information. While there may

be a controversy over whether admissions must be based on

personal knowledge, see Brookover v. Mary Hitchcock Mem. 

Hosp., 893 F.2d 411, 414-16 (1st Cir. 1990) (canvassing the 

controversy), unattributed statements repeated by party-

opponents cannot be admissible. As the original declarant is

unknown, it is impossible to determine whether the original

declarant also fits within the party-opponent definition, and

thus the exclusion of such office gossip was proper. See, 

e.g., Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1001- 

02 (3rd Cir. 1988) (excluding such unattributed hearsay when

repeated by party-opponent); Cedeck v. Hamiltonian Fed. Sav. 

& Loan Ass'n, 551 F.2d 1136, 1138 (8th Cir. 1977) ("That part 

of [the party-opponent's] statement which contains a

reiteration of what someone told him is not admissible as an

admission by [a] party-opponent since the author of the

statement is unknown.")5

 

5. We distinguish cases where the statements are not offered
as proof that they were in fact made, but rather as general
examples of unlawful company policy. See, e.g., Abrams v. 
Lightolier, Inc., 50 F.3d 1204, 1215-16 (3rd Cir. 1995) 
(finding admissible supervisor's statement, repeated to ADEA
plaintiff, that company "frowned on" older workers); Hybert 
v. Hearst Corp., 900 F.2d 1050, 1053 (7th Cir. 1990) 
(admitting supervisor's statements about "concerns" and
"feelings" of home office as direct statements of the
company's attitude or policy rather than second-hand
repetitions, inadmissible because unattributed). Vazquez
does not claim that PRMSA had a policy or custom of
persecuting Romero followers, but merely that one Board

-13- 13

Likewise, the exclusion as hearsay of the statement

of Miguel Rossy, PRMMI's president, that Vazquez's dismissal

was at the behest of "someone [at PRMSA] who doesn't like

you, who is opposed to Carlos [Romero's] people," was within

the district court's discretion. Even assuming dubitante

that Rossy's description of the statement is enough to

identify the declarant as Lopez, or at least as a Board

member and thus an agent of PRMSA, Rossy was the President of

PRMMI, not PRMSA. This breaks the link in the hearsay chain.

There is no evidence that Rossy was authorized to speak for

PRMSA's Board, and thus his statement cannot be considered

within the scope of his agency as an officer of PRMMI.

See Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1091-92 

(9th Cir. 1990) (no abuse of discretion in exclusion of

double-hearsay statement which was related to plaintiff by an

agent of a different employer where there was "no evidence

that [the person who related the alleged statement] had any

authority to make [such] admissions"); cf. Woodman, 51 F.3d 

at 1094 (examining record to determine whether manager was

acting within scope of her employment); Miles v. M.N.C. 

Corp., 750 F.2d 867, 874 (11th Cir. 1985) (same). 

 

member, Lopez, did so in his case. See Abrams, 50 F.3d at 
1216 (contrasting a "specific declaration made [concerning] a
particular employment decision . . . offered for its truth,"
which was inadmissible if from an unknown declarant, with a
supervisor's "opinion regarding company policy," which was
admissible).

-14- 14

However, many of the other conversations on which

Vazquez relies should not have been excluded as hearsay. Del

Valle's conversation with Vazquez relating the "problem" of

Lopez's "political differences" with Vazquez fits within the

Rule 801(d)(2) exception. The statement concerning political

differences was made by a party (Lopez) and related by Del

Valle, who was Chairman of the PRMSA Board and thus the agent

of PRMSA, a party. The district court abused its discretion

by excluding this conversation as "hearsay," if that is

indeed what it did. 

Similarly, the statement of Gonzalez, a PRMSA Board

member, that "the pressure was too strong" to reverse the

decision is not hearsay, as Gonzalez was clearly an agent of

PRMSA. Thus, Gonzalez's statement can properly be used to

prove the truth of the matter asserted, i.e., that he felt

under "pressure" not to reverse the PRMSA decision. However,

Gonzalez's statement cannot be used as "hearsay within

hearsay" to prove that Lopez had urged the Board to stand by

a decision to dismiss Vazquez. Gonzalez does not identify

the person applying "pressure," and the statement of an

unidentified declarant is hearsay.

Finally, Vazquez's description of his confrontation

with Lopez is plainly not hearsay. Lopez is a party, and his

direct admission that he had made some informal comments to

Del Valle that he did not want Vazquez to hear is not

-15- 15

hearsay. Again, Lopez's statement can be used to prove the

truth of the matter asserted, i.e., that he made comments to

Del Valle that he did not want repeated to Vazquez.

The Lopez statement, however, is insufficient to

establish an "adoptive admission" that Lopez acknowledged

that he had been responsible for Vazquez's dismissal and that

it was in retaliation for Vazquez's support of Romero, as

Vazquez argues. See Fed. R. Evid. 801(d)(2)(B) (defining as 

"not hearsay" "a statement of which the party has manifested

an adoption or belief in its truth"). The burden is on

Vazquez to show that the circumstances surrounding the

conversation with Lopez demonstrate that Lopez manifested a

belief in the accusation of retaliation. See Ricciardi v. 

Children's Hosp. Med. Ctr., 811 F.2d 18, 24 (1st Cir. 1987). 

"In all cases, the burden is on the proponent to convince the

judge that in the circumstances of the case a failure to

respond is so unnatural that it supports the inference that

the party acquiesced in the statement." Id. (quoting J. 

Weinstein & M. Berger, Weinstein's Evidence  

801(d)(2)(B)[01], at 801-202 n.15 (1985) (internal quotation

marks and alterations omitted)).

The record, however, reveals that Vazquez, at most,

accused Lopez of making statements to Del Valle, and Lopez

responded by admitting that he had made "some remarks."

Vazquez does not say that he accused Lopez directly of

-16- 16

retaliating against him, only that he accused him of making

statements to Del Valle about their political differences.

It would hardly be unnatural to fail to respond to an

accusation that Vazquez does not claim to have made.

B. Summary Judgment on the Motive for Vazquez's Dismissal 

In order to forestall summary judgment, Vazquez

must have demonstrated that his support of Romero was at

least a "motivating factor" in the Board's decision to

dismiss him. See Rodriguez-Rodriguez v. Munoz-Munoz, 808 

F.2d 138, 143 (1st Cir. 1986). Vazquez must "point[] to

[admissible] evidence in the record which, if credited, would

permit a rational fact finder to conclude that [his

dismissal] stemmed from a politically based discriminatory

animus," LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996) 

(quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 

1994) (internal quotation marks and alterations omitted)),

rather than for economic reasons. "Without more, [Vazquez's]

unsupported and speculative assertions regarding political

discrimination will not be enough to survive summary

judgment." Id. 

The record reveals that Vazquez felt his dismissal

was unfair and that many of his friends agreed with him. He

had worked for many years at PRMMI, climbing the corporate

ladder, had rejected early retirement two years before and

was then dismissed. The conversations he relates contain

-17- 17

many statements of support from PRMSA and PRMMI employees who

sympathized with him. However, "[m]erely juxtaposing a

protected characteristic -- [Lopez's] politics -- with the

fact plaintiff was treated unfairly is not enough to state a

constitutional claim." Acosta-Orozco, 1997 WL 775350, at *5 

(quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 

58 (1st Cir. 1990) (internal quotation marks omitted)).

Instead, Vazquez must point to evidence which shows

that Lopez singled out Vazquez's position, which was not

included in the original reorganization plan, for elimination

and that he did so to retaliate for Vazquez's support of

Romero. Vazquez can point to three conversations to support

this theory. First, he can point to Del Valle's comments

that "the problem" was Vazquez's "political differences" with

Lopez. Second, he can point to Lopez's acknowledgement that

he made "some comments" to Del Valle that he did not want

Vazquez to hear. Finally, he can note Gonzalez's statement

that Gonzalez felt "pressure" not to reverse Vazquez's

dismissal.

These comments are insufficient to establish that

Lopez engineered Vazquez's dismissal in order to retaliate

for Vazquez's support of Romero, and amount to no more than

"unsupported and speculative assertions." LaRou, 98 F.3d at 

661. Even viewing these statements in the light most

favorable to Vazquez, no reasonable jury could find that such

-18- 18

statements prove by a preponderance of the evidence that

Vazquez's support of Romero was a "substantial" or

"motivating" factor in the PRMSA Board's decision to include

his position in the reorganization. That Vazquez had

"political differences" with a single PRMSA Board member at

some unidentified time does not establish that the Board or a

majority of the Board acquiesced in a plan to eliminate his

position in retaliation for those differences. Nor does it

establish that "the problem" referred to the elimination of

Vazquez's position. Similarly, Gonzalez's statement that he

felt "pressure" not to reverse Vazquez's dismissal says

nothing about the reason for the pressure. Facing a deficit

in excess of $300 million, PRMSA Board members undoubtedly

felt pressure to stand by the reorganization plan.

Finally, we find no abuse of discretion in the

action of the district court in entering summary judgment sua

sponte for PRMSA, following the district court's grant of

summary judgment to PRMMI and Lopez. Vazquez had

"appropriate notice and a chance to present [his] evidence on

the essential elements of [his] claim . . . ." Berkovitz v. 

Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996). 

Vazquez does not identify how his opposition to summary

judgment for PRMSA would have differed in any way from his

opposition to summary judgment for PRMMI and Lopez.

-19- 19

The judgment of the district court is affirmed. 

Costs to appellees.

-20- 20