GRACE DOLAN, administratrix, *vs.* COMMONWEALTH.

No. 87-92.

Suffolk.   March 10, 1988. — April 1, 1988.

Present: GRANT, CUTTER, & BROWN, JJ.

*Evidence,* Hearsay, Hospital record, Relevancy and materiality.

At the trial of claims for wrongful death and conscious suffering arising out
   of a decedent's having drowned off a beach operated and maintained
   by the Metropolitan District Commission (MDC) in which the jury, in
   response to special questions, found that although certain employees of
   the MDC had been negligent, negligence attributable to the MDC had
   not been the proximate cause of the decedent's injuries, the judge erred
   in refusing to edit a hospital record prior to its admission in evidence
   so as to exclude therefrom entries to the effect that the decedent had
   inhaled and ingested angel dust, marihuana and alcohol prior to going
   into the water, where the entries consisted of second level hearsay from
   a source which was not shown to be reliable and were not rendered
   admissible by G. L. c. 233, § 79, and where, moreover, any information
   imparted by the entries was irrelevant to the question whether the MDC
   (and thus the Commonwealth) was to be charged with negligence by
   reason of delay in commencing the search. [567]

CIVIL ACTION commenced in the Superior Court Department
on April 22, 1983.

The case was tried before *Paul K. Connolly,* J.

*Chester L. Tennyson, Jr.,* for the plaintiff.

*Mark P. Sutliff,* Assistant Attorney General, for the Commonwealth.

GRANT, J. This is an action in two counts by which the
plaintiff administratrix seeks (in count 1) to recover damages
for the wrongful death of her decedent (Julia), who died as
the result of a drowning accident in waist-deep water off Carson
Beach in South Boston which is operated and maintained by
the Metropolitan District Commission (MDC) and (in count
2) damages for the conscious pain and suffering endured by

Julia prior to her death in Boston City Hospital (BCH) some two weeks after the accident. There was evidence from which the jury could have found negligence on the part of the MDC lifeguards in not promptly forming a line of search for Julia after her disappearance was reported by her brother. There was also evidence from which it could have been found that supervisory personnel of the MDC had been negligent in reducing the number of lifeguards on duty and in not requiring them to participate in line-of-search drills. The jury, in response to special questions, found that the lifeguards had not been negligent, that other (i.e., supervisory) employees of the MDC had been negligent, but that the negligence attributable to the MDC had not been the proximate cause of Julia's injuries. Judgment was entered for the defendant.

The only question argued on the plaintiff's appeal is whether the trial judge erred in refusing to edit the BCH hospital record prior to its admission in evidence so as to exclude therefrom multiple entries to the effect that Julia had inhaled or ingested angel dust, marihuana and alcohol prior to going into the water.[1] The question was first raised below by a timely pretrial motion in limine by which the plaintiff sought an order that defense counsel and all witnesses refrain from inquiring into or referring to Julia's alleged use of a controlled substance at any time. The judge was specifically given to understand that the motion encompassed within it the portions of the hospital record now under consideration. The plaintiff was unable to secure a ruling on her motion in advance of trial.

It appeared from the face of the hospital record, and from the evidence at trial, that Julia was comatose when she was admitted to BCH, from which it follows that the information on the intake sheet as to angel dust, marihuana and alcohol was not contributed by her. Neither the hospital record nor the record at trial disclosed who had contributed that information. Two of the lifeguards who had attempted to resuscitate Julia

---

[1] An entry made in the record at the time of Julia's admission to the hospital was echoed in several subsequent entries. The judge did exclude an entry to the effect that Julia had attempted suicide some time prior to the accident.

after she was removed from the water testified without objection to having smelled alcohol in her vomitus, but it did not appear that either of those witnesses had ever gone near the hospital. There was evidence that Julia's boyfriend, her brother and the brother's wife had all been taken from the beach to the hospital in a police cruiser. The judge excluded a question put to the brother on cross examination as to whether he and the boyfriend had had a conversation in the cruiser concerning Julia's smoking angel dust before going into the water.

There was evidence that a physician at the hospital had requested a brief medical history of Julia from her brother. The brother could not remember any of the questions which had been asked of him except ones as to allergies and a possible heart condition. The judge excluded a question to the brother as to whether he had related anything to the physician concerning what Julia might have had to eat or drink prior to the accident. There was no evidence that either the boyfriend or the brother's wife had been questioned as to Julia's medical history. The hospital record disclosed that a toxicology screen had been performed and that the only controlled substance discovered was valium in an amount which (as counsel represented to the judge and as was later confirmed by the plaintiff's medical witness) was within a safe therapeutic range that would not have caused Julia to lose consciousness. So matters stood near the close of the second day of trial, when the plaintiff was forced to offer the unedited hospital record in evidence as a necessary prelude to the testimony of her last witness, a forensic pathologist who gave testimony as to how long it would take for certain vital functions to cease after the lungs are filled with water.[2]

---

[2] At the opening of the third day of trial, and before the jury had had an opportunity to see the hospital record, the plaintiff presented and the judge formally denied a new motion in limine expressly directed to the portions of the hospital record now under consideration. The judge stated that he was noting the plaintiff's "exception." The defendant has raised no question as to whether the plaintiff's rights were properly saved. In the circumstances, we see nothing in Commonwealth v. Gabbidon, 398 Mass. 1, 7 (1986), or in Commonwealth v. Shea, 401 Mass. 731, 740 (1988), which requires us to blind ourselves to prejudicial error merely because the plaintiff did not voice a useless objection at the time the record was actually offered in evidence.

We think it clear that the original and subsequent entries in the hospital record concerning Julia's having used or consumed angel dust, marihuana and alcohol (see note 1, *supra*) consisted of second level hearsay from a source which was not shown to be reliable and that such hearsay was not rendered admissible by G.L. c. 233, § 79. *Bouchie* v. *Murray*, 376 Mass. 524, 527, 528-529, 530, 531 (1978). Compare *Commonwealth* v. *Dunne*, 394 Mass. 10, 17 (1985). So much of the record as spoke of Julia's having consumed angel dust and marihuana should also have been excluded on the ground of relevance because, as was urged below by counsel for the plaintiff, what had caused Julia to lose consciousness and slip beneath the surface of the water was not relevant to the question whether the MDC (and thus the Commonwealth) was to be charged with negligence by reason of the delay in commencing a search for Julia once her brother had reported her missing.[3] See *Wright* v. *American Precast Concrete*, 19 Mass. App. Ct. 1014, 1015 (1985).

The erroneous admission of the disputed entries had the effect of injecting an extraneous issue into the case. Counsel for the defendant was not content to leave well enough alone. In the course of his closing argument he read to the jury so much of the discharge summary appearing in the hospital record as recited that Julia had jumped into the water "apparently after smoking some mari[h]uana and taking ethanol and some angel dust" and urged the jury (without any basis in the evidence) to conclude that that information had been supplied by Julia's brother. In all the circumstances, we cannot conclude that the error did not contribute to the jury's answers that the lifeguards had not been negligent and that the MDC's negligence was not the proximate cause of Julia's injuries. Compare *Wright* v. *American Precast Concrete*, 19 Mass. App. Ct. at 1016.

*Judgment reversed.*

---

[3] There was evidence in the form of the MDC's answers to interrogatories, which were read to the jury, that some twenty-five minutes elapsed between the time Julia was reported missing and the time she was discovered and removed from the water. She was discovered by a volunteer, not by one of the lifeguards.