NANCY DOYLE, administratrix,[1] *vs.* STEPHEN DONG.

Middlesex. January 7, 1992. - May 18, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ

*Evidence*, Hospital record, Hearsay, Medical record, Cumulative. *Negligence*, Doctor.

In a medical malpractice action, the judge properly concluded that certain unidentified notations in the patient's hospital record were admissible under G. L. c. 233, § 79, as statements of treatment and medical history made by those obligated in the course of their employment to transmit medical information to the keeper of the record, where the circumstances in which the entries were made and their level of detail indicated that those entries possessed "the characteristics justifying the presumption of reliability" normally accorded hospital records. [684-687] LIACOS, C.J., dissenting.

In a medical malpractice action, the judge improperly admitted in evidence under G. L. c. 233, § 79, a certain letter written by the defendant not contemporaneously but after his treatment of the patient; however, where the letter was merely cumulative of other evidence, its admission was not prejudicial. [687-689]

CIVIL ACTION commenced in the Superior Court Department on January 18, 1984.

The case was tried before *Charles M. Grabau*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Elizabeth Mulvey* for the plaintiff.

*Timothy P. O'Neill* (*M. Catherine Huddleson* with him) for the defendant.

LYNCH, J. The plaintiff brought an action for medical malpractice in the Superior Court claiming the defendant was negligent in failing to diagnose her fourteen month old son's

---

[1]Of the estate of Matthew Doyle.

epiglottitis,[2] and in discharging him from emergency hospital care. The jury returned a verdict on special questions for the defendant and the plaintiff appealed. The Appeals Court reversed the judgment reasoning that it was error for the trial judge to admit in evidence a portion of a hospital record containing information recorded from an unidentified source at another hospital. We allowed the defendant's application for further appellate review. We affirm the judgment of the Superior Court.

We summarize the factual underpinnings which are more fully set forth in *Doyle* v. *Dong,* 30 Mass. App. Ct. 743, 744-745 (1991). On June 21, 1983, at 4:15 A.M., the plaintiff took her son, who was feverish and had difficulty breathing, to the emergency room of Sancta Maria Hospital. The defendant examined the child but was unable to make a successful visual throat examination. The defendant then ordered a chest X-ray and a blood test. The blood test demonstrated a markedly elevated white blood count. Next, the defendant consulted the child's pediatrician, Dr. Samuel Andonian, over the telephone. Dr. Andonian agreed to examine the child later that day. The defendant concluded that the child had an early viral syndrome and discharged him.

Later that morning, the child stopped breathing and the plaintiff rushed him to the emergency department of Symmes Hospital. There Dr. James Campbell and Dr. Chal Kwon, an anesthesiologist, performed an intubation in an attempt to resuscitate the child. The Symmes Hospital record indicates a diagnosis of respiratory arrest, with a possibility of sepsis. There is no mention in the Symmes Hospital medical record of any abnormality associated with the epiglottis. Subsequently, the child was transferred to the intensive care unit at Children's Hospital in Boston. Dr. Louis Rubin, the admitting physician at Children's Hospital, made a contemporaneous note in the Children's Hospital admission record

---

[2]Epiglottitis is a bacterial infection of the epiglottis, a small flap of tissue that covers the trachea during swallowing to prevent the ingestion of food into the lungs.

that the child's epiglottis was "normal" while at Symmes Hospital. Dr. Rubin was not part of the Children's Hospital transfer team. The child remained in a coma for three days while at Children's Hospital; he died on June 25, 1983. All the medical experts agreed the immediate cause of death was an inability to breathe precipitated by epiglottitis.

The principal issue is whether the reference in the Children's Hospital record noting the child's epiglottis as "normal" while he was at Symmes Hospital was properly admitted. Also at issue is whether a posttreatment letter written by the defendant and incorporated into the Sancta Maria Hospital record was properly admitted.

1. *The "normal" epiglottis notation.* The defendant contends that, under G. L. c. 233, § 79 (1990 ed.), the judge properly admitted the Children's Hospital record containing the notation. In response, the plaintiff argues that the record was inadmissible under the statute since it contained second-level hearsay from an unidentified source. We disagree with the plaintiff.

General Laws c. 233, §. 79, provides in pertinent part: "Records kept by hospitals . . . under [G. L. c. 111, § 70] shall be admissible . . . as evidence . . . so far as such records relate to the treatment and medical history of such cases . . . ." The statute provides an exception to the hearsay rule so as to allow hospital records to be admitted to prove the truth of the facts in the record that relate to treatment and medical history. *Commonwealth* v. *Copeland,* 375 Mass. 438, 442 (1978). The fact that the record may contain second-level hearsay is of no consequence as long as the broad requirements of the statute are met. Those requirements make admissible "those portions of records relating to treatment and medical history which possess the characteristics justifying the presumption of reliability." *Bouchie* v. *Murray,* 376 Mass. 524, 528 (1978). "[E]ntries made in the regular course of the institution's operation from the personal knowledge of the recorder or *from a compilation of the personal knowledge of those who have an obligation in the course·of their employment to transmit that medical information to*

*the recorder are admissible under the exception*" (emphasis added). *Id.*

The purpose of the statute is to admit presumptively reliable hospital records in evidence without the need of calling numerous hospital personnel as witnesses. *Bouchie* v. *Murray, supra* at 528. The presumption arises because the entries relating to treatment and medical history are routinely made by those responsible for making accurate entries and are relied on in the course of treating patients. *Id.* "In the case of a hospital record, the offering party must show that the evidence comports with the requirements of G. L. c. 233, § 79." *Commonwealth* v. *Dunne*, 394 Mass. 10, 16 (1985)."

In this case, 'the notation, "At Symmes Hosp. E[mergency] R[oom] . . . epiglottal c[ulture] impression n[orma]1 epiglottis," is clearly a statement relating to the treatment and medical history of the child. The question then becomes, does this information possess the characteristics justifying the presumption of reliability? The notation was made contemporaneously with the child's transfer. There was ample evidence to support the conclusion that it is routine for the transferring hospital to transmit such information to the receiving hospital when transferring a patient. As such, the medical staff at Children's Hospital would rely on this information in treating the child while in its care.

The entry in the record containing the disputed portion[3] is quite detailed. It begins: "At Symmes Hosp. E[mergency] R[oom] . . . ." It then details the child's pulse rate and blood pressure, the results of specific laboratory tests, including the chest X-rays, and the kinds and dosages of medication the child received. Next, it describes the child's intubation, mentions that the child's pupils were dilated, and states "epiglottal c[ulture] impression n[orma]1 epiglottis." Finally, it notes: "He was still hypotensive (but ? 90/50) [and] received 10cc/1g NS x2."

---

[3]The plaintiff challenges only the "epiglottal c[ulture] impression n[orma]1 epiglottis" notation contained in the Children's Hospital record.

The "fourth requirement" of *Bouchie* relied on in the dissent has no application in these circumstances. There the court was discussing voluntary statements of third persons in contrast with the third paragraph which makes admissible information from persons who are under a medical obligation to transmit such information. The nature of the information and its level of detail warrant the conclusion that Dr. Rubin received the Symmes Hospital information from someone, or from a report prepared by someone, on Symmes Hospital's medical staff who either personally treated the child or obtained the information from someone who had, and therefore had an obligation to transmit that information to Dr. Rubin, the recorder at Children's Hospital, when the child was transferred. Dr. Rubin could not have otherwise obtained such detailed information concerning the child's care while at Symmes Hospital. Thus, the circumstances in which the entries were made and their level of detail indicate that those entries in the Children's Hospital record "possess the characteristics justifying the presumption of reliability" normally accorded hospital records. *Bouchie* v. *Murray, supra* at 528. Therefore, the judge could properly conclude that notations in the Children's Hospital record regarding the child's care at Symmes Hospital were admissible under the statute as statements of treatment and medical history made by those obligated in the course of their employment to transmit medical information to the keeper of the record.

It should be kept in mind that, as we said in *Bouchie* v. *Murray, supra* at 527-528, "the statute allows admission of the substantive content of hospital records because of the presumption of reliability which attaches to statements relating to treatment and medical history in these records. This presumption of reliability of the information contained in hospital records arises primarily from the fact that entries in these records are routinely made by those charged with the responsibility of making accurate entries and are relied on in the course of treating patients." Nowhere in the statute or in the decisions of this court is it suggested that this presumption of reliability disappears when the source of the informa-

tion is unknown or that the information relied on is second-level hearsay.

The failure to identify the source of the information from Symmes Hospital goes to the weight of the evidence afforded the Children's Hospital record and not its admissibility. See *Commonwealth* v. *Franks*, 359 Mass. 577, 580 (1971) (results of laboratory tests contained in hospital record are admissible even though identity of person performing the test is unknown). See also P.J. Liacos, Massachusetts Evidence 334 (5th ed. 1981) ("And the absence of personal knowledge of the maker of the record goes to the weight of the evidence — not its admissibility — since the reliability of such records is predicated on the fact that they are routine reflections of day-to-day operations"). But see *Ricciardi* v. *Children's Hosp. Medical Ctr.*, 811 F.2d 18, 21-22 (1st Cir. 1987) (failure to identify source of information renders hospital record inadmissible under G. L. c. 233, § 79). Moreover, "hospital records containing facts relevant to medical history or treatment are admissible without need for, and despite the absence of, testimonial corroboration." *Commonwealth* v. *Copeland*, 375 Mass. 438, 442 (1978).

In sum, this statute relies on a pragmatic test of reliability. Is the information of a nature that is relied on by medical professionals in administering health care? It is of no consequence that, under similar statutes and decisions, it is required that each level of secondary hearsay falls within some exception to the hearsay rule. A health care professional looking at a hospital record would not be concerned with levels of hearsay, but rather the nature of the information supplied. That is the test of the statute to be applied under the supervision of the trial judge who has the discretion to exclude the record in appropriate circumstances.

2. *The posttreatment letter.* We agree with the Appeals Court that the posttreatment letter of the defendant which

was incorporated into the Sancta Maria Hospital record[4] was inadmissible. We conclude, however, that the letter was merely cumulative of other evidence and, therefore, its admission was not prejudicial.

The day after treating the child the defendant learned the child was in a coma at Children's Hospital. The defendant then wrote a letter, which was later incorporated into the Sancta Maria Hospital record, recounting his telephone conversation with the child's pediatrician, Dr. Andonian. The letter mentions the symptoms the defendant observed during his examination of the child and Dr. Andonian's response on being informed of those symptoms. Included in the letter is a statement which the plaintiff used to impeach the defendant, "I did also mention the possibility of croup to him, although it was not a high clinical possibility at the time based on the absence of respiratory distress, stridor and 'barking' cough." It then states that Dr. Andonian responded in the negative when asked whether the child should be started on ampicillin antibiotics.

---

[4]The letter states as follows:

"22 June 1983

"Joseph G. Maloney MD
Sancta Maria Hospital
Cambridge, Massachusetts

"Dear Dr. Maloney:

"In reference to the case of Matthew Doyle seen at the Sancta Maria Hospital Emergency Room early on 21 June 1983, I would like to clarify a point that may not have been stated on the encounter record. After evaluating the patient, I did call his primary pediatrician, Dr. Andoni[a]n at home to discuss my findings, particularly the high fever and elevated white blood count. I did also mention the possibility of croup to him, although it was not a high clinical possibility at the time based on the absence of respiratory distress, stridor and 'barking' cough. Dr. Andoni[a]n felt it was reasonable to send the patient home with followup later that morning, which I then recommended to the mother, and to which the mother was agreeable. I asked Dr. Andoni[a]n concerning starting ampicillin antibiotics, but Dr. Andoni[a]n did not feel strongly that this was necessary.

"Stephen Dong MD"

At trial, both the defendant and Dr. Andonian testified regarding the substance of their telephone conversation. The defendant attempted to shift responsibility from himself to Dr. Andonian for not recognizing the possibility of the presence of epiglottitis. The defendant also testified he did not diagnose the possibility of croup and therefore did not consider the differential diagnosis of epiglottitis. Although the plaintiff objected to the admission of the letter, it was this statement of the defendant that the plaintiff sought to impeach through the use of the letter.

Except for denying that the defendant mentioned the possibility of croup, Dr. Andonian confirmed the defendant's testimony concerning the information contained in the letter. Dr. Andonian testified that the defendant telephoned him and informed him of the following: Fever; elevated white blood count; nonspecific respiratory symptoms; negative chest X-ray; no drooling; throat, ears, and pharynx normal. Accordingly, the letter was merely cumulative of the testimony of the defendant and Dr. Andonian. No prejudice arose from its admission. *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971). We need not reach the other issues raised in this case.

*Judgment of the Superior Court affirmed.*

LIACOS, C.J. (dissenting). The hospital record at issue contains second-level hearsay for which no exception to the rule against hearsay exists. It therefore should not have been admitted in evidence. I dissent.

General Laws c. 233, § 79 (1990 ed.), provides an exception to the hearsay rule for certain hospital records.[1] In

---

[1]"Records kept by hospitals . . . under [G. L. c. 111, § 70] shall be admissible, and records which the court finds are required to be kept by the laws of any other state [or the United States], by hospitals . . . may be admitted by the court, in its discretion, as evidence . . . so far as such records relate to the treatment and medical history of such cases . . . but

*Bouchie* v. *Murray*, 376 Mass. 524, 531 (1978), the court established a four-part test to determine when hospital records are admissible under § 79:

> "First, the document must be the type of record contemplated by G. L. c. 233, § 79. Second, the information must be germane to the patient's treatment or medical history. Third, the information must be recorded from the personal knowledge of the entrant or from a compilation of the personal knowledge of those who are under a medical obligation to transmit such information. Fourth, voluntary statements of third persons appearing in the record are not admissible unless they are offered for reasons other than to prove the truth of the matter contained therein or, if offered for their truth, come within another exception to the hearsay rule or the general principles discussed [earlier in the opinion]." (Citation omitted.)[2]

Parts three and four of the *Bouchie* test recognize that hospital records may raise problems of "totempole" or multiple hearsay. See P.J. Liacos, Massachusetts Evidence 334 (5th ed. 1981 & Supp. 1985). If the record contains the personal knowledge of the recorder, it is simply hearsay — an out-of-court statement by the recorder offered to prove the truth of the matter asserted. If the record contains information that someone conveyed to the recorder, it contains two

---

nothing therein contained shall be admissible as evidence which has reference to the question of liability." G. L. c. 233, § 79.

"[T]he purpose of the statute [is] to admit presumptively reliable evidence without the necessity of calling numerous hospital personnel as witnesses." *Bouchie* v. *Murray*, 376 Mass. 524, 528 (1978). "This presumption of reliability of the information contained in hospital records arises primarily from the fact that entries in these records are routinely made by those charged with the responsibility of making accurate entries and are relied on in the course of treating patients." *Id.*

Unless the records are so technical as to be unintelligible without further explanation, they are admissible without testimonial corroboration. *Commonwealth* v. *Copeland*, 375 Mass. 438, 442 (1978).

[2]The fulfilment of the first and second parts of the test is not at issue.

levels of hearsay: the first level is the recorder's out-of-court
statement (i.e., the record), and the second level is the con-
tent of the record, that is, the out-of-court statement made to
the recorder by the person who conveyed the information.
Under parts three and four of the test, *Bouchie, supra* at
531, information in the record that was conveyed to the re-
corder by a third party is inadmissible unless: (1) the infor-
mation consists of "personal knowledge of those who are
under a medical obligation to transmit such information" to
the recorder;[3] (2) the third party's statement falls within
some other exception to the hearsay rule; or (3) the state-
ment is not offered for its truth.[4]

The record in the instant case contains both first and sec-
ond-level hearsay: Dr. Rubin recorded that someone told him
that the child's epiglottal culture was normal at Symmes
Hospital.[5] The court holds that the record is admissible be-

---

[3]The court has drawn an analogy to the business records exception to
the hearsay rule. See G. L. c. 233, § 78 (1990 ed.). "The [recorder's]
hearsay sources must carry the same indicia of reliability, arising from
regularity and business motives, that bring his own act of recording the
information within the statutory exception. Thus, unless statements on
which the [recorder] relies fall within some other exception to the hearsay
rule, the proponent must show that all persons in the chain of communica-
tion, from the observer to the [recorder], reported the information as a
matter of business duty or business routine. . . . Ordinarily this can, of
course, be accomplished by presenting evidence of normal business prac-
tice, with no need to produce each speaker." (Citations omitted.) *Wingate*
v. *Emery Air Freight Corp.*, 385 Mass. 402, 406 (1982) (§ 78 case). See
*Commonwealth* v. *McDonough*, 400 Mass. 639, 643 n.8 (1987) (§ 79 case
referring to *Wingate*).

[4]The fourth part of the *Bouchie* test is that "voluntary statements of
third persons appearing in the record are not admissible unless they . . .
come within another exception to the hearsay rule *or the general princi-
ples discussed supra*" (emphasis added). *Bouchie, supra* at 531. While
this language might seem to open other avenues for the admission of sec-
ond-level hearsay, the *Bouchie* test has been read to require an exception
to the hearsay rule for each level of hearsay contained in the record. See,
e.g., P.J. Liacos, Massachusetts Evidence 334 (5th ed. 1981 & Supp.
1985); see also the views expressed by Justice Greaney in Comment, Evi-
dence — Hospital Records Exception to the Hearsay Rule — Medical
History and Treatment — Second Level Hearsay, 64 Mass. L. Rev. 33,
34-35 (1979). See also *Bouchie, supra* at 528-529.

[5]"At Symmes Hosp. ER . . . epiglottal Cx. . . . imp was nl. epiglottis."

cause it meets the first of the three conditions for the admissibility of second-level hearsay:[6] "Dr. Rubin received the Symmes Hospital information from someone, or from a report prepared by someone, on Symmes Hospital's medical staff who either personally treated the child . . . , and therefore had an obligation to transmit that information to Dr. Rubin, the recorder· at Children's Hospital, when the child was transferred." *Ante* at 686. The court notes that the record was made contemporaneously with the transfer of the patient, when a transferring hospital routinely transmits patient information to a receiving hospital, and that the record contains large amounts of technical medical history that would be available (and comprehensible) only to someone familiar with patient treatment. Furthermore, the court notes that Children's Hospital itself relied on the information provided. While the identity of the person who gave the information to Dr. Rubin is unknown,[7] the court holds that this lack of identification goes to the weight, not to the admissibility, of the record.

The court has understated the importance of ascertaining the identity of the person who supplied the information to Dr. Rubin. In this respect, the court's reliance on *Commonwealth* v. *Franks*, 359 Mass. 577 (1971), is misplaced. In *Franks,* the identity of the recorder was unknown, but because there was evidence that the record in question was a routine hospital report, it was held admissible. See *id.* at 580. In the instant case, however, the identity of the recorder is known (Dr. Rubin), but the identity of the person who reported to him is not. That is, we know the identity of the declarant of first-level hearsay, but we do not know the iden-

---

[6]The information within the record does not fall under any other exception to the hearsay rule, and it was offered to prove the truth of the matter asserted.

[7]As the Appeals Court noted, the source of Dr. Rubin's note was never explained. See *Doyle* v. *Dong*, 30 Mass. App. Ct. 743, 747 (1991). The attending physician at Symmes Hospital testified that he had not given the information to anyone at Children's Hospital, and the physician who helped resuscitate the child could not recall his observations of the epiglottis. *Id.* at 747 n.8.

tity of the declarant of second-level hearsay. *Franks* is there-
fore inapplicable to the instant case.[8] At the second level of
hearsay, unlike the first, some knowledge of identity is essen-
tial to determine admissibility.[9] In the instant case, the court
must determine whether the person who reported to Dr.
Rubin had personal knowledge of the epiglottal culture and
whether he or she had an obligation to report to Children's
Hospital.

The defendant did not meet his burden of proving that the
information recorded by Dr. Rubin came from a reliable
source, namely a person under an obligation to record truth-
fully what was personally known to that person. It is reason-
able to assume, as the court does, that the information in the
record came from a Symmes Hospital employee, and that the
information was transferred during the routine transportation
of a patient. Nevertheless, it remains unclear how the person
at Symmes Hospital obtained the information.[10] The defend-
ant, as the proponent of this evidence, had the burden of
proving that the individual at Symmes Hospital either had
personal knowledge of the epiglottal culture or received in-
formation from those "under a medical obligation to transmit
such information," *Bouchie, supra* at 531. See *Common-
wealth* v. *Dunne*, 394 Mass. 10, 16 (1985). The defendant
did not have to identify each individual in the chain of com-
munication, see *Wingate* v. *Emery Air Freight Corp.*, 385

---

[8]Similarly, the court's quotation from P.J. Liacos, *supra* at 334, see *ante*
at 687, refers to a passage discussing the identity of the "maker of the
record."

[9]That is, knowledge of identity is essential unless the recorder received
information from hospital records meeting the *Bouchie* requirements. In
such a case, as in *Franks, supra,* the second-level hearsay would fall under
an established exception to the hearsay rule, namely § 79, and would be
admissible. The defendant in the instant case offered no evidence that Dr.
Rubin received his information from a Symmes Hospital record. See *Com-
monwealth* v. *Dunne*, 394 Mass. 10, 16 (1985) (proponent of evidence
bears burden of proving admissibility). He therefore cannot rely on a
*Franks* argument.

[10]That is, it is not established that the "information [came] from some-
one ... who ... *personally* treated the child" (emphasis added). See *ante*
at 686.

Mass. 402, 406 (1982), but he had to show that the chain
was routine and reliable. See *Dolan* v. *Commonwealth*, 25
Mass. App. Ct. 564, 567 (1988) (hospital record inadmissible
because source of information therein not proven reliable).[11] Given the mystery surrounding the origins of the epiglottal culture results, see note 9, *supra*, the defendant did
not meet his burden. The hospital record was not admissible
as evidence. I dissent.[12]

---

[11]I believe that the United States Court of Appeals for the First Circuit
has interpreted § 79 correctly. In *Ricciardi* v. *Children's Hosp. Medical
Ctr.*, 811 F.2d 18 (1st Cir. 1987), the plaintiff sought to introduce a note
from his medical record suggesting the occurrence of a problem during his
surgery. The information was written in medical shorthand and clearly
came from someone familiar with the surgery, but the recorder did not
have personal knowledge of the incident and the person who conveyed the
information to the recorder was unidentified. The court held that the note
contained inadmissible hearsay. See *id.* at 22.

[12]The defendant has argued that, even if the record was inadmissible, its
admission in evidence was harmless error. The court does not reach this
issue. I would hold that the admission of the record was not harmless error, for essentially the reasons offered in the opinion of the Appeals Court.
See *Doyle*, 30 Mass. App. Ct. at 749, and cases cited ("Because the note
[in the hospital records] was the only evidence that the epiglottis was normal and not red and swollen, and because the defense employed the damaging notation often and to effect, we cannot say that its admission was
harmless").