COMMONWEALTH *vs.* DANIEL JOHNSON.

No. 02-P-66.

Bristol. May 13, 2003. - September 4, 2003.

Present: GRASSO, McHUGH, & MILLS, JJ.

*Evidence,* Hospital record, Hearsay, Scientific test, Learned treatise, Medical record, Judicial notice. *Controlled Substances. Motor Vehicle,* Operating under the influence.

The judge in a criminal case erroneously admitted a hospital record of the defendant's rapid urine screen test pursuant to the hearsay exception in G. L. c. 233, § 79, where qualifying language in the hospital record itself raised sufficient doubt concerning the reliability of the test and required further explanation; such erroneous admission of the record prejudiced the defendant and warranted reversal of the defendant's conviction for operating a motor vehicle under the influence of a narcotic pursuant to G. L. c. 90, § 24. [166-170]

In a criminal case where the defendant was charged with illegal possession of a class B substance under G. L. c. 94C, § 34, and operating a motor vehicle under the influence of a narcotic pursuant to G. L. c. 90, § 24, the judge erred in allowing the prosecutor to cross-examine the defendant with a pill book and in admitting that book in evidence where the book neither was an appropriate subject for judicial notice nor satisfied any exception to the hearsay rule. [170-171]

In a criminal case where the defendant was charged with operating under the influence of cocaine under G. L. c. 90, § 24, and illegal possession of a class B substance, the judge properly denied the defendant's motions for required findings of not guilty, where there was sufficient evidence for a jury to conclude that the defendant possessed the cocaine found in the sunroof lining of his car. [171-172]

COMPLAINT received and sworn to in the Attleboro Division of the District Court Department on September 18, 2000.

The case was tried before *Gregory L. Phillips,* J.

*Eugene F. Sullivan, Jr.,* for the defendant.

*Adam T. Narris,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. A District Court jury found the defendant guilty of

operating under the influence of cocaine, a narcotic drug, G. L. c. 90, § 24, and illegal possession of a class B substance. See G. L. c. 94C, § 34. On appeal, the defendant contends that the trial judge erred in (1) admitting portions of his hospital record containing an unreliable rapid urine screen test; (2) allowing the prosecutor to cross-examine the defendant with "The Pill Book" (pill book)[1] and admitting the pill book in evidence; and (3) denying motions for required findings of not guilty. He also contends that a State trooper's testimony as to the meaning of certain abbreviations in the defendant's hospital record creates a substantial risk of a miscarriage of justice.

Because we agree that admission of the hospital record amounts to prejudicial error, we reverse the defendant's conviction for operating under the influence of a narcotic. We affirm the conviction for illegal possession of a class B substance.

*Background.* In the light most favorable to the Commonwealth, we recite facts that the jury could have found, reserving further details for discussion in connection with the specific issues raised. See *Commonwealth* v. *Cortez*, 438 Mass. 123, 124 (2002). Enroute from Charlestown to the Foxwoods Casino in Connecticut, the defendant drove his motor vehicle off Route 495 for no apparent reason. The car left no skid or brake marks on the road and eventually came to rest about 150 feet off the road in heavy brush, which prevented the defendant from opening the car doors.

State Trooper Matthew Roy arrived at the scene and observed the defendant standing on the operator's seat with his head and torso protruding through the car's open sunroof. Roy observed the defendant behaving erratically. The defendant's pupils appeared constricted. He seemed confused and disoriented. His answers to questions were unintelligible; he seemed to answer questions that were not asked.

The Mansfield fire department removed the defendant from the car and escorted him to an ambulance. The defendant told Roy that he did not know how the accident happened or where he was. The defendant thought it was around 1:00 A.M. on Saturday morning when, in fact, it was 9:30 P.M. Treating medi-

---

[1]The pill book is apparently a publication sold at CVS Pharmacies.

cal personnel observed the defendant to be disoriented and confused, with slurred speech. Roy found several Altoid breath mints and a bag containing .54 grams of cocaine in the weather stripping that surrounded the sunroof opening where the defendant had been observed standing.[2]

The defendant was taken to Sturdy Memorial Hospital for treatment. There, medical personnel administered tests that included a rapid urine screen test. The test results were recorded in a discharge summary report that noted a negative reading for alcohol but positive readings for cocaine, phencyclidine, and benzodiazepine. The record of the test in question states prominently: "THIS TEST IS A RAPID SCREENING SYSTEM FOR DRUGS OF ABUSE IN URINE. A SECOND METHOD MUST BE USED TO OBTAIN A CONFIRMED ANALYTICAL RESULT." The hospital record also noted that the defendant denied drug or alcohol use, and that upon neurological examination at 10:50 P.M., his speech was clear, he was "awake, alert, oriented to time" and had a steady gait.

After the Commonwealth rested, the defendant testified that he could not remember the accident. He stated that the pills found in the vehicle were prescribed medications — Valium, Percocet, and Oxycontin — that he took for pain from a past surgery for a herniated disc, and to aid in sleep. He denied having taken any of these prescribed medications on the day of the accident. He denied ever having been advised as to side effects of these medications, either by the prescribing physician or by pharmacists. He denied knowledge of the cocaine or that he had ever used cocaine.

1. *The hospital record.* Prior to trial, the judge denied the defendant's motion to exclude the record of the rapid urine screen test as unreliable. At trial, over the defendant's objection, the Commonwealth introduced the hospital record pursuant to G. L. c. 233, § 79.[3]

---

[2]Inside a film container found in the vehicle, the police recovered eight tablets of Diazepam (Valium), a class C controlled substance, and fourteen tablets of Oxycodone (Oxycontin), a class B controlled substance, as well as some vitamins.

[3]In pertinent part, G. L. c. 233, § 79, provides: "Records kept by hospitals [as required by statute] . . . may be admitted . . . as evidence in the courts of

We conclude that admission of the record was error. General Laws c. 233, § 79, creates a hearsay exception that spares "hospital personnel the burden of spending time in court to verify what is recorded as matter of professional routine and . . . accord[s] a presumption of reliability to records whose accuracy is relied upon in the treatment of patients." *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923, 926 (1991), citing *Bouchie* v. *Murray*, 376 Mass. 524, 527-528 (1978).[4] "The presumption arises because the entries relating to treatment and medical history are routinely made by those responsible for making accurate entries and are relied on in the course of treating patients." *Doyle* v. *Dong*, 412 Mass. 682, 685 (1992). The statute relies on a "pragmatic test of reliability" that permits the introduction of records containing even second level hearsay provided the information in the record is of a nature that is relied on by medical professionals in administering health care. *Id.* at 687. While creating an exception to the hearsay rule, the statute does not permit the admission of hospital records that are facially unreliable. The statutory reliability test is "to be applied under the supervision of the trial judge who has the discretion to exclude the record in appropriate circumstances." *Ibid.* This is a circumstance requiring exclusion.

Ordinarily, hospital records containing facts relevant to medical history or treatment are admissible without need for, and despite the absence of, testimonial corroboration or explanation. See *Commonwealth* v. *Copeland*, 375 Mass. 438, 442 (1978) (statute allows admittance of records absent any corroborative testimony); *Commonwealth* v. *Moran*, 439 Mass. 482, 487-488 (2003) (in light of purpose, language, and contents of record, explanation of diagnostic terms by medical expert not necessary). Here, by contrast, qualifying language in the hospital record itself raised sufficient doubt concerning the ability of

the Commonwealth so far as such records relate to the treatment and medical history of such cases . . . ."

[4]Consistently, our courts have ruled that test results showing blood alcohol level, performed as routine hospital procedure, may be admitted under G. L. c. 233, § 79. See, e.g., *Commonwealth* v. *Dube*, 413 Mass. 570, 574 (1992); *Commonwealth* v. *Russo*, 30 Mass. App. Ct. at 925-926; *Commonwealth* v. *McCready*, 50 Mass. App. Ct. 521, 524 (2000). But see *Commonwealth* v. *Sheldon*, 423 Mass. 373, 376 (1996).

hospital personnel to rely upon the rapid urine screen test in the course of treatment as to rebut the presumption of reliability and require further explanation. See *Commonwealth* v. *Dube*, 413 Mass. 570, 571 n.2 (1992) (noting that Commonwealth will presumably offer expert testimony at trial explaining how serum test is converted to blood alcohol scale); *Commonwealth* v. *Ennis*, 2 Mass. App. Ct. 864, 865 (1974) (judge did not abuse discretion in excluding diagnostic tests that required expert testimony to be understood by jury). The record indicates that "*A SECOND TEST MUST BE USED TO OBTAIN A CONFIRMED ANALYTICAL RESULT*" (emphasis supplied). Such a disclaimer calls the reliability of the test into sufficient question as to create doubt as to whether the record alone can stand competent as proof of the medical facts recited therein. See *Diaz* v. *Eli Lilly & Co.*, 14 Mass. App. Ct. 448, 453-454 (1982); Proposed Mass.R.Evid. 803(6) (medical record admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness"). Compare *Commonwealth* v. *Copeland*, 375 Mass. at 442 (hospital record, standing alone, competent as proof of medical facts).

The Commonwealth did not provide any testimony explaining what the test results mean. Nor was there any testimony regarding whether and for what purposes medical personnel rely upon the test, or the test's limitations that prompted the disclaimer. See *Commonwealth* v. *Sargent*, 24 Mass. App. Ct. 657, 660-661 (1987) (doctors explained routine hospital practice and reason for that standard procedure).

In light of the qualifying language, the record of the rapid urine screen test results, standing alone, was not sufficiently reliable to be admitted under G. L. c. 233, § 79. The disclaimer could mean that the reported drugs were present in the defendant's system and that further testing would be required to determine their concentrations (a confirmed analytical result). However, it could also mean that the test merely identifies residual markers of drugs that were present in the defendant's system at some indeterminate time in the past or that it detects something associated with these drugs (or other drugs) and that other tests are necessary to render the results reliable. Without explanation, we do not know what the record means or for

what purposes it may be relied upon by medical personnel. The jury would be left to speculate as to the record's significance upon the important questions of whether, and when, the defendant had ingested a controlled substance, and whether such a controlled substance was in the defendant's system in concentrations sufficient to affect his ability to operate a motor vehicle. See *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 447-448, cert. denied, 519 U.S. 1015 (1996) (where material in medical records not self-explanatory, in absence of medical testimony, jury could only speculate regarding conclusions to draw from records).

In sum, the record of the rapid urine screen test itself raised considerable doubt as to whether the information it contained is of a nature that is relied on by medical professionals in administering health care. *Ibid.* Without explanation, it was not admissible under the statute because it was not sufficiently reliable. In these circumstances, admission of the record was an abuse of discretion and error of law. See *Doyle* v. *Dong*, 412 Mass. at 687.

The erroneous admission of the record was prejudicial to the defendant's case. The prosecutor argued strenuously that the best evidence of the defendant having ingested controlled substances, notwithstanding his disavowals, was the record of the rapid urine screen test, and that the medical professionals would not have performed the test had they thought it unreliable. Conversely, the defendant testified that he had never consumed cocaine, had not taken even his prescription drugs since the previous day, and was likely depleted by a steam bath and not having eaten. He offered that the accident accounted for his erratic behavior in its immediate aftermath and pointed to the hospital examination conducted less than two hours after the accident that showed him to be alert, oriented, and steady, with clear speech. We cannot say "with fair assurance" that the error in admission of the hospital record did not influence the jury, or had but very slight effect. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

We discuss two other problematic evidentiary issues that may arise upon retrial, the use and introduction of the pill book, and

Roy's explanation of drug abbreviations in the defendant's urine screen test.

2. *The pill book.* On cross-examination, the prosecutor asked the defendant to read several passages from the pill book, purchased at a CVS pharmacy, that purported to describe the effects of Oxycontin and Diazepam. The book itself was later admitted in evidence. The defendant maintains that the judge erred in allowing the book to be used in this manner and in admitting it in evidence.[5] We agree.

The pill book was not an appropriate subject for judicial notice, being neither a matter of common knowledge nor one falling into any of the other categories for which judicial notice is appropriate. See *Commonwealth* v. *Hartman*, 404 Mass. 306, 313 n.9 (1989). Compare *Commonwealth* v. *Wilborne*, 382 Mass. 241, 250 n.10 (1981) (defendant requested judicial notice be taken of dosage and effects of Demerol in Physician's Desk Reference). See also Proposed Mass.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either [1] generally known within the territorial jurisdiction of the trial court or [2] capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned").

The book was also "never established as reliable or authoritative, contain[ed] nothing but inadmissible hearsay, and [did] not satisfy any of the exceptions to the hearsay rule." *Commonwealth* v. *Reese*, 438 Mass. 519, 527 (2003). The book was not admissible as a "learned treatise" under G. L. c. 233, § 79C, which speaks to the admission of treatises or periodicals in medical malpractice and contract cases. *Ibid.* Nor was it admissible under the learned treatise exception of Proposed Mass.R. Evid. 803(18) as adopted in *Commonwealth* v. *Sneed*, 413 Mass. 387, 395-396 (1992). That rule is "limited to statements called to the attention of an expert witness on cross-examination." *Id.* at 395.

---

[5]The parties dispute whether the defendant objected to the use of the book. Because the transcript is incomplete, we are unable to resolve whether the error is preserved or is to be reviewed under the substantial risk of miscarriage of justice standard. The discrepancy is immaterial because we reverse the conviction on other grounds.

Additionally, *Sneed* itself does not permit admission of the treatise or periodical as an exhibit. See *id.* at 395-396; *Commonwealth* v. *Reese*, 438 Mass. at 527.

3. *Abbreviation testimony.* We need not address the defendant's contention that a substantial risk of miscarriage of justice arises from the judge's permitting Roy to explain the meaning of three abbreviations contained within the defendant's rapid urine screen test record.[6] We note, however, that the better course would involve either a stipulation or the entrant testifying as to the meaning of the abbreviations. See *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 203 (1987). Nevertheless, a trial judge has broad discretion in deciding whether a medical record can be read and decoded. See *ibid.* Some leeway must be given for jurors and witnesses to decipher common abbreviations, or abbreviations whose meaning can be culled from the context of the case, as it would subvert the purpose of the statute, see G. L. c. 233, § 79, if medical professionals were called into court in every instance to explain shorthand notes and abbreviations contained in medical records. See *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. at 203.

4. *Required finding of not guilty.* Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 679-680 (1979), the judge did not err in denying the defendant's motions for required finding of not guilty. There was sufficient evidence for a jury to conclude that the defendant possessed the cocaine found in the sunroof lining of his car, a foot away from where he stood when the State trooper observed him. "[K]nowledge, power, and intent to exercise control over the illicit substance . . . may be shown by 'presence supplemented by other incriminating evidence.' " *Commonwealth* v. *Monson*, 57 Mass. App. Ct. 867, 870 (2003), quoting from *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989). The jury could infer from this evidence that the defendant had constructive possession of the cocaine. *Ibid.*

The evidence was ample that the defendant operated the car on Route 495, a public highway. The defendant admitted having operated the vehicle. Corroborating the defendant's admission

---

[6]The abbreviations were PCP (phencyclidine), BZO (benzodiazepine), and COC (cocaine).

were observations of the police and safety personnel that the defendant was alone in the driver's seat of the car, whose doors could not be opened easily. Contrast *Commonwealth* v. *Leonard*, 401 Mass. 470, 472-473 (1988). Even without the erroneously admitted hospital record, the defendant's erratic behavior and appearance, the facts surrounding the accident itself, and the discovery of cocaine and other controlled substances inside the vehicle permitted the inference that the defendant's capacity to operate was impaired by a narcotic drug. See *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 361 n.7 (1982).

On the charge of operating a motor vehicle under the influence of narcotics, the judgment is reversed and the verdict is set aside. On the charge of possession of a class B substance, the judgment is affirmed.

*So ordered.*