Commonwealth *vs.* Edward C. Lampron.

No. 04-P-982.

Plymouth. September 15, 2005. - December 23, 2005.

Present: Cypher, Brown, & Cohen, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Intoxication, Medical record, Hospital record, Testimonial statement. *Statute,* Construction. *Practice, Criminal,* Assistance of counsel.

At the trial of a complaint charging operation of a motor vehicle while under the influence of liquor, the admission in evidence of certain hospital records did not violate the rule against hearsay, where such records were generally admissible under G. L. c. 233, § 79 [343-344]; moreover, the erroneous admission in evidence of a preliminary toxicology report, which was not sufficiently reliable to be admitted under § 79, did not require reversal, where it could be said with fair assurance that the evidence did not influence the jury or had but very slight effect, given the overwhelming evidence of alcohol intoxication [344].

This court concluded that the admission in evidence at a criminal trial of certain hospital records did not violate the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution, as interpreted by *Crawford* v. *Washington,* 541 U.S. 36 (2004), and art. 12 of the Massachusetts Declaration of Rights, where the statements contained in the records clearly were related to evaluating the defendant's condition at the time of his hospital admission in order to determine appropriate treatment and therefore were not testimonial in nature. [344-346]

There was no merit to a criminal defendant's contentions that the jury had returned a general verdict and that one of the theories on which he was tried lacked evidentiary support. [346-348]

This court was not persuaded, on the record presented for review, that a criminal defendant did not have the assistance of counsel during the return of the verdict and revocation of bail at his trial. [348-349]

Complaint received and sworn to in the Wareham Division of the District Court Department on August 6, 2003.

The case was tried before *Daniel W. O'Malley,* J.

*Yefim Luvish* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. A District Court jury convicted the defendant, Edward C. Lampron, of operating under the influence of liquor, G. L. c. 90, § 24(1)(*a*)(1); operating to endanger, G. L. c. 90, § 24(2)(*a*); and use of a motor vehicle without authority, G. L. c. 90, § 24(2)(*a*).[1] On appeal, the defendant claims (1) that his hospital records should not have been admitted in evidence; (2) that his case was tried on two theories but the evidence was insufficient on one of the theories; and (3) that he was not represented by counsel during a critical stage of the proceedings. We affirm the convictions.

*Factual background.* Shortly after midnight on March 30, 2003, Denise Maudsley, with her husband and two sons, returned to Middleborough from a drama festival in Boston, a function which involved her daughter's high school. Her daughter had taken a ride home from that event with friends. As the Maudsleys approached their home, Denise Maudsley saw an unfamiliar white van in her perennial garden. The van was running, facing the street with its lights on. As the Maudsleys pulled into their driveway, the van sped off onto Wood Street. Denise Maudsley observed that her daughter was not home yet, so the Maudsleys followed the van and Denise Maudsley tried to reach her daughter by cellular telephone.

The van swerved across the road, turned right, and traveled about one-half mile. There, the van turned right into a condominium complex. When the Maudsleys followed and entered the complex, the van turned around and passed them, going in the opposite direction. As the Maudsleys continued their pursuit, the van turned back onto Wood Street and headed back toward their house. The road was marked with a double yellow line, but the driver did not stay in his lane, driving "more or less" in the middle of the road and using both lanes. It was a rainy night and visibility was poor. The Maudsleys, who were going at the speed limit of forty miles per hour, observed the van going faster and pulling away.

The van crossed Route 28, a busy road, without slowing or stopping at a stop sign. The Maudsleys, still unable to reach their daughter by cellular telephone, followed the van across

---

[1]The defendant also was found responsible on three charges of civil motor vehicle violations.

Route 28 to the other side of Wood Street. As the van approached an island at the fork in the road at Wood and Acorn Streets, it failed to bear right as required, entered the wrong way, made a U-turn, and headed back toward Route 28. The back of the van slid and fishtailed. The van passed the Maudsleys and headed back to Route 28, crossing it a second time.

The Maudsleys turned around and followed the van onto Wood Street toward their house. When the van attempted to turn right on Chestnut Street, a winding tree-lined road, the van slid sideways and then continued on. The Maudsleys lost sight of the van's taillights, but proceeded along Chestnut Street for about one and one-half miles until they came upon the van, crashed head-on into a tree.

The Maudsleys stopped and determined that their daughter was not in the severely damaged van. The defendant, the only occupant, was trapped, with his upper body hanging out of the window. Denise Maudsley held the defendant's head so that he could breathe more easily. The defendant's speech was unintelligible, and he smelled of alcohol. During this time, the van caught fire, which Maudsley's husband extinguished. Denise Maudsley formed the opinion, based on the strong odor of alcohol, the defendant's driving, and his inability to speak clearly, that the defendant "was really drunk."

The Middleborough police arrived within five or ten minutes and extinguished a second fire in the van. Despite the rainy weather, smoke from the fires in the van, and the distinct smell of powder from the deployed airbags, the police detected a strong odor of alcohol coming from the defendant. Emergency personnel also noticed the odor of alcohol as they worked to free the defendant from the van. The defendant was combative with his rescuers, but eventually was freed and safely placed in an ambulance.

The odor of alcohol was strong in the back of the ambulance, and the emergency medical personnel could tell that the odor came from the defendant's breath. The defendant's eyes were glassy and bloodshot. The defendant continued to be combative and to resist emergency medical treatment. Emergency medical technician James J. O'Brien testified that, in his opinion, based on the odor of alcohol coming from the defendant, the

defendant's conduct inside the ambulance, and the appearance of the defendant's eyes, the defendant was intoxicated. After the defendant was taken to a Taunton hospital, he was moved to Rhode Island Hospital for more intensive treatment.

When the Maudsleys returned to their home, Denise Maudsley saw marks on her lawn and garden where the van had been parked and three Miller Lite beer cans on the ground. The beer cans had not been there when the Maudsleys left the house that morning.

1. *The medical records.* The defendant's medical records from Rhode Island Hospital were admitted in evidence over the defendant's objection. The records contained results from a preliminary drug screening test and notations such as "positive for ETOH,"[2] "positive for cocaine," "intoxicated," and "odor of ETOH." The defendant argues that the admission of his medical records violated the rule against hearsay and his rights under the confrontation clause of the Sixth Amendment to the United States Constitution, as interpreted by *Crawford* v. *Washington,* 541 U.S. 36 (2004), and art. 12 of the Massachusetts Declaration of Rights.

a. *Hearsay.* General Laws c. 233, § 79, provides in pertinent part:

> "Records kept by hospitals [as required by statute] . . . may be admitted . . . as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases . . . ."

The statute "permits the introduction of records containing even second level hearsay provided the information in the record is of a nature that is relied on by medical professionals in administering health care." *Commonwealth* v. *Johnson,* 59 Mass. App. Ct. 164, 167 (2003). There is no doubt in this case that the medical personnel obtained and recorded the information contained in the medical records for the purpose of treating the

---

[2]Emergency medical technician O'Brien testified that "ETOH" is an abbreviation for alcohol used in reports of responses to emergency calls.

defendant and relied on that information to treat him. The records were generally admissible under G. L. c. 233, § 79.[3]

The preliminary toxicology report stands differently. The toxicology report contained a disclaimer indicating that "[p]ositive results of screening tests are not confirmed." We conclude that the preliminary toxicology report should not have been admitted in evidence. In light of the qualifying language in the report, the preliminary report was not sufficiently reliable to be admitted under G. L. c. 233, § 79. See *Commonwealth* v. *Johnson*, 59 Mass. App. Ct. at 168-169 (G. L. c. 233, § 79, does not permit the admission of hospital records that are facially unreliable).

The erroneous admission of the preliminary report does not, however, require reversal. The evidence of alcohol intoxication was overwhelming; therefore, we can say with "fair assurance" that the error in admission of the preliminary screening test concerning cocaine did not influence the jury or had but very slight effect. *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). Contrast *Commonwealth* v. *Johnson*, 59 Mass. App. Ct. at 169 (admission of a rapid urine screen test was prejudicial where the prosecutor strenuously argued that the test was the best evidence of the defendant having ingested a controlled substance); *Commonwealth* v. *Shellenberger*, 64 Mass. App. Ct. 70, 73-76 (2005) (evidence in a medical record and in a physician's testimony insufficient to show the defendant was impaired).

b. *The* Crawford *v.* Washington *issue.* In *Crawford* v. *Washington*, 541 U.S. at 50-51, 68-69, the United States Supreme Court held that admission of hearsay evidence violates the defendant's

---

[3]The defendant also claims that the Rhode Island Hospital medical records should not have been admitted because they were not properly authenticated. The medical records were accompanied by a certification page attesting that the certification was made pursuant to Rhode Island General Laws § 9-19-39. The defendant argues that the Commonwealth should have offered evidence that § 9-19-39 is comparable to G. L. c. 111, § 70, which requires hospitals to keep accurate records. Notwithstanding the fact that the judge did not explicitly find that the Rhode Island Hospital records were required to be kept under that State's law, the records were admissible because Rhode Island imposes a requirement similar to G. L. c. 111, § 70, that hospitals keep records of treatment and of medical history. See *Commonwealth* v. *Johnson*, 371 Mass. 862, 870-871 (1977); *Commonwealth* v. *Rivet*, 30 Mass. App. Ct. 973, 976 (1991).

rights under the confrontation clause of the Sixth Amendment, even if the evidence is admissible under an exception to the hearsay rule, if it is testimonial in nature. According to the defendant, *Crawford* casts doubt on the admission of medical records under G. L. c. 233, § 79, because they contain statements he asserts are testimonial. The defendant also urges us to conclude that *Crawford* renders the statute unconstitutional.

The Supreme Judicial Court, in *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 13 (2005), articulated a framework to apply in determining whether an out of court statement is testimonial. Statements that are "per se testimonial" include those that are "part of an affidavit, deposition, confession, or prior testimony at a preliminary hearing, before a grand jury, or at a former trial, or [statements] procured through law enforcement interrogation (which does not include emergency questioning by law enforcement to secure a volatile scene or determine the need for or provide medical care)." Statements are not per se testimonial if they are "out-of-court statements made in response to questions from people who are *not* law enforcement agents, and statements offered spontaneously, without prompting, regardless of who heard them" (emphasis original). *Commonwealth* v. *Gonsalves*, *supra* at 11. "An out-of-court incriminating statement that is not per se testimonial still may be testimonial in fact. The proper inquiry is whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting a crime." *Id.* at 12-13.

The statements in issue do not fall into the classes of statements that are "per se testimonial," and thus we must determine whether they were testimonial in fact by evaluating whether a reasonable person in the declarant's position would anticipate the statement being used against an accused in investigating and prosecuting a crime. The notations that the defendant challenges appear to have been made within hours or a day after his admission and, therefore, clearly are related to evaluating his condition at the time of his admission in order to determine appropriate treatment. Nothing in the notations in this context suggests that the notations were made in anticipation of their use in the

investigation and prosecution of a crime.[4] Contrast *Las Vegas* v. *Walsh*, 91 P.3d 591, 595, as modified by 100 P.3d 658 (Nev. 2004) (affidavit prepared by a nurse solely for the prosecutor's use at trial to show the presence of alcohol in blood was testimonial). We conclude, therefore, that the statements in the medical records were not testimonial in fact and did not violate the confrontation clause.

Finally, we conclude that *Crawford* casts no doubt on the constitutionality of G. L. c. 233, § 79, and does not render that statute unconstitutional. The Supreme Court stated that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Crawford* v. *Washington*, 541 U.S. at 68.[5,6]

2. *Alleged trial on two theories of culpability.* The defendant claims that the jury returned a general verdict; that he was tried on two theories, one of which lacked evidentiary support; and that, because it was impossible to determine on which theory the jury's verdict was based, his conviction must be reversed. According to the defendant, he was tried on a theory of impairment based on alcohol as well as a theory of impairment based on a mixture of alcohol and drugs, and there was legally insuf-

---

[4]Only a few pages of the Rhode Island Hospital medical records have been submitted to us. The covering certification sheet states that the defendant received services there from March 30, 2003, through May 14, 2003, and the complete record consists of 598 pages. Because the statements the defendant challenges were entered in the medical records at the beginning of these services, they readily appear to be remote and unconnected to the prosecution of the defendant. The complaint against the defendant was not filed until August 6, 2003. The documents were certified on February 20, 2004, and submitted at trial in March, 2004.

[5]The defendant's assertion that the admission of the medical records was a violation of due process is not accompanied by argument and, in the circumstances of this case, we perceive no abridgment of his due process rights. Compare *Commonwealth* v. *Pike*, 430 Mass. 317, 326 (1999).

[6]Though the Commonwealth argues that *Commonwealth* v. *Verde*, 444 Mass. 279, 283-285 (2005), provides support for its position, the issue in that case was whether, as part of a criminal investigation, an analysis of drugs based on a "well-recognized scientific test" by technicians in a State laboratory were akin to business or official records and thus would not implicate the confrontation clause. That issue is distinct from the one addressed here where we decide whether medical records, which include material that is both discretionary and based on opinion, kept for the purpose of diagnosis and treatment, implicate the confrontation clause.

ficient evidence to support the latter theory. Examination of the record shows that, in fact, the defendant was tried on only one theory of impairment and, in any event, the jury returned a specific and not a general verdict. The verdict slip specified that the charge was "operating under the influence of liquor."[7] "[B]ecause the jury rendered [a] special, not general, verdict[], the defendant's conviction may be upheld if the verdict on the basis of the [impairment by alcohol] theory withstands appellate scrutiny." *Commonwealth* v. *Hernandez*, 439 Mass. 688, 693 (2003). There can be no doubt that the defendant was tried on only one theory.

Contrary to the defendant's claim, the jury instructions did not permit the jury to return a verdict of guilty of operating under the influence of drugs. The judge instructed the jury that the defendant was charged with "operating a motor vehicle while under the influence of intoxicating liquor," and explained the elements in detail. He gave an instruction indistinguishable from that in *Commonwealth* v. *Stathopoulos*, 401 Mass. 453, 456 n.4 (1988).[8] While that instruction provides that the jury could convict the defendant even if alcohol was only one contributing cause of the defendant's diminished capacity or if the effect of the alcohol was magnified by some other cause, such an instruction does not equate to charging the jury on a separate theory of culpability. Compare *id.* at 456 (even where

---

[7]The clerk read the charge to the jury, specifying that the defendant was charged with operating under the influence of alcohol. The prosecutor, in his opening statement, told the jury that the evidence would prove that the defendant operated the motor vehicle while under the influence of alcohol. Furthermore, when the verdict was read the jury were asked, "[w]hat say you Mr. Foreman on complaint charging the defendant with operation of a motor vehicle under the influence of liquor?"

[8]In *Commonwealth* v. *Stathopoulos*, 401 Mass. at 456 n.4, the Supreme Judicial Court advised that if there is evidence of a mixture of drugs and alcohol in a case of operating under the influence of alcohol, an appropriate instruction might be given similar to the following:

"You are instructed that, if the defendant's ability to operate safely was diminished by alcohol, the defendant has violated the statute even though some other cause, also operating on the defendant while he or she was driving, tended to magnify the effect of the liquor or concurred in causing the defendant's diminished capacity to operate safely."

instructions mentioned a mixture of alcohol and drugs, the jury could not have understood the charge to negate the requirement of a causal relationship between alcohol consumption and a diminished ability to drive safely). Here, the judge did not mention that drugs could be another cause, and there was no evidence of drug use, except for the preliminary screening test. While the prosecutor noted the preliminary screening results in closing argument, he stated that the judge would give a relevant instruction on impaired operation.

The mixture of alcohol with another substance is not a separate theory of culpability. "When the defendant is charged with operating while under the influence of intoxicating liquor, it is immaterial whether the driver is under the influence of intoxicating liquor and other substances. . . . [In] order to find guilt, the jury need only to find that the liquor contributed to the defendant's impairment." *Id.* at 457, quoting from *State* v. *West*, 416 A.2d 5, 9 (Me. 1980). There was no error.

3. *The absence of trial counsel during a critical stage.* The defendant claims that he did not have assistance of counsel when the jury returned the verdict and his bail was revoked. During the trial, defense counsel alerted the judge that he had an ongoing medical emergency. The judge permitted defense counsel to be absent during jury deliberations and the return of the verdict, and stated that he would have substitute counsel represent the defendant during those times. The judge advised defense counsel, in the presence of the defendant, that if the jury returned a verdict of guilty, it was his intention to revoke the defendant's bail, but that he would delay sentencing until defense counsel was able to be present. The defendant asserts on appeal that no substitute counsel appeared and that he was unrepresented during these final stages of his trial.

The defendant bases his claim on the absence of an identifying reference to substitute counsel in the record. The Commonwealth argues that substitute counsel was present and that a passing comment made by the judge was, in fact, directed to substitute counsel. Although it does not plainly appear that the judge noted in the record that substitute counsel was designated

by name to represent the defendant, there is no reason to imagine that a judge who was specifically cognizant of the defendant's right to counsel and defense counsel's impending absence would then neglect that right at the critical moment.

The defendant bears the burden of presenting a record that is adequate for appellate review. If there is information omitted from the record that is necessary to the defendant's claims, then it is the defendant's burden to correct the record. See Mass. R.A.P. 8(b)(3), as amended, 430 Mass. 1601 (1999); Mass. R.A.P. 8(e), as amended, 378 Mass 932 (1979). See generally *Commonwealth* v. *Woody*, 429 Mass. 95, 97-99 (1999).

The parties could have stipulated the content of the missing portions of the record or presented their differences to the judge who heard the case, who might have settled the content of the missing portions easily enough in this case. See, e.g., Mass. R.A.P. 8(b)(3)(v), as appearing in 388 Mass. 1110 (1983). We are not persuaded, on this record, that the defendant did not have counsel during the return of the verdict and revocation of bail.

*Judgments affirmed.*